THE STATE OF OHIO, APPELLEE, *v.* CASTAGNOLA, APPELLANT.

[Cite as *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565.]

(No. 2013–0781—Submitted May 28, 2014—Decided April 28, 2015.)

KENNEDY, J.

{¶ 1} In this discretionary appeal from the Ninth District Court of Appeals, we consider whether a search-warrant affiant's undisclosed evidentiary inference stated as an empirical fact usurped the inference-drawing authority of the magistrate who issued the warrant in reliance on the affidavit. We also consider the application of the particularity requirement of the Fourth Amendment to the search of a computer. For the reasons set forth below, we hold that the search warrant at issue in this case was invalid and that the evidence obtained in executing the warrant must be suppressed. We therefore reverse the judgment of the appellate court.

I. Facts and Procedural History

{¶ 2} David Maistros is the law director and prosecutor for the city of Twinsburg, in Summit County. In April 2010, Maistros charged appellant, Nicholas Castagnola, with selling alcohol to minors, a first-degree misdemeanor. Two months later, on June 15, 2010, Maistros discovered that his family vehicles had been damaged and egged.

{¶ 3} On June 27, a police source known as Source May showed Twinsburg patrolman Alan Ternosky a series of text messages that he had received from Castagnola bragging about having damaged Maistros's vehicles. After reviewing those messages, Ternosky had Source May wear a concealed recording device and record a conversation with Castagnola at Castagnola's home. In the recorded conversation, Castagnola admitted that he and Zach Downer had

damaged and egged Maistros's vehicles. He added that he had had to "look up" Maistros's address on court records.

{¶ 4} Armed with the text messages and recording, Twinsburg detective Mark Kreiger sought an arrest warrant for Castagnola and a warrant to search his residence. The detective began the search-warrant affidavit by describing his training and experience in law enforcement and in narcotics investigations. The affidavit then identifies Castagnola's residence and requests that a search warrant be issued for the premises and persons and vehicles on the property for

> [r]ecords and documents either stored on computers, ledgers, or any other electronic recording device to include hard drives and external portable hard drives, cell phones, printers, storage devices of any kind, printed out copies of text messages or emails, cameras, video recorders or any photo imaging devices and their storage media to include tapes, compact discs, or flash drives.

{¶ 5} The affidavit states that any items found would be seized and used as evidence in prosecuting the crimes of retaliation, criminal trespassing, criminal damaging, and possession of criminal tools. In the section titled "This Knowledge Is Based on the Following Facts," the affidavit sets forth the facts that led the detective to believe that evidence of the crimes charged would be found in the items sought to be seized.

{¶ 6} The affidavit states that approximately 25 incidents of criminal mischief had occurred within the prior two months involving intentional damage to vehicles in Twinsburg and Reminderville. Thereafter, the affidavit quotes the following text messages that Source May received from Castagnola on June 24 and June 25:

> Found this address and went to his house and did more than chief[1] it but keep that down ok.
>
> It was funny he lives in Chagrin Falls and his law office is there too and I can't tell you in text but in person.
>
> Where are you I did some damage.
>
> Well we should chief Twinsburg Police.
>
> What do you think my teaching the prosecutor a lesson LOL.
>
> How many David Maistros' could there be who are attorneys.

---

1.  Twinsburg patrolman Alan Ternosky testified that "chiefing" is another name for "egging."

LOL as for his car objects are no longer closer than they appear lol.

HAHAHA well he should not mess with me the bastard I hate him so are you and Austin coming to my trial on the 14th?

Ok well it will be fun whether I win or lose.

{¶ 7} The affidavit states that on June 28, Source May agreed to go to Castagnola's home while wearing a concealed recording device. It states that during the recorded conversation with Source May, Castagnola admitted that he and Downer had damaged Maistros's cars and a Reminderville police car.

{¶ 8} In lieu of attaching the recording of the conversation or a transcript of the recording to his search-warrant affidavit, the detective paraphrased the exchange between Source May and Castagnola as follows:

> [Castagnola] states that that's some funny shit though isn't it? Go to his house and knock off his shit. He was so pissed off today in court. * * * Castagnola then says that he found Maistros online in the clerk of courts because he [Maistros] got a parking ticket several years ago. Castagnola said that he * * * went through Maistros's mailbox to confirm that Maistros did live at the address he found for him online.

{¶ 9} The detective did not state in the search-warrant affidavit the Internet-access capability or other capabilities of Castagnola's cell phone. Nor did the search-warrant affidavit provide information, beyond the "online" inference, to indicate that Castagnola had conducted an online search for Maistros's address or that a computer that was used to conduct such a search was located in Castagnola's residence.

{¶ 10} After reviewing the search-warrant affidavit, a judge of the Stow Municipal Court issued the search warrant. The warrant repeated the affidavit's description of the items to be searched for and the affidavit's statement that if the items were found, they would be seized and used as evidence in prosecuting the alleged crimes.

{¶ 11} The execution of the search warrant led to the seizure of numerous items, including two computers, one of which had not been used in two years.

{¶ 12} Natasha Branam, a forensic cyber-crimes analyst at the Ohio Bureau of Criminal Identification and Investigation ("BCI"), examined Castagnola's computers. She later testified that Castagnola's computer "was brought in for [a case involving] menacing, threatening, and intimidation." Initially she reviewed the case synopsis and the search warrant, which said that Castagnola had obtained Maistros's address online. Branam performed her analysis by making a copy of

the hard drive of the recently used computer. She then used a forensic software program, that "go[es] through documents, images, videos" on the hard drive. She testified that initially, she was "looking for any evidence of intimidation of David Maistros * * * and anything associated with that." She searched for the name "David Maistros" using her software program, without result. However, Branam testified that she later found data on David Maistros in the computer's "unallocated space," which is "the space where deleted data goes."

{¶ 13} Branam then "went to the images to find images associated with court websites." She explained that the "My Image" tab "has all the images associated with the drive being examined. It includes regular pictures saved to the computer, website pictures, icons, any pictures that would be in a document." Under this tab, Branam could see virtual images not only of court websites but of all the websites that had been visited using that computer and all the pictures saved on the computer. As soon as she clicked on the "My Image" tab, the screen filled with images that she thought might be child pornography. She stopped her investigation and sought another warrant.

{¶ 14} A Twinsburg police detective obtained a second warrant to search the contents of the computers for evidence relating to child pornography. The evidence from the search resulted in Castagnola's indictment in September 2010 for ten counts of pandering sexually oriented material involving a minor, fourth-degree-felony offenses.

{¶ 15} BCI reported its findings on November 4, 2010. The report says, "The two (2) HTML documents that were recovered from unallocated space show information about David Maistros' parking violation that occurred on 9/16/2002; the contents of these documents match the text available upon the Stow Municipal Court website."

{¶ 16} Regarding the pandering charges, the report discloses that the search based on the second search warrant revealed over a thousand videos and images of suspected child pornography. In December 2010, Castagnola filed a motion to suppress, arguing that the first search warrant was not supported by probable cause, because nothing on which the affidavit was based suggested that there was a computer in Castagnola's home, let alone that a computer in his home concealed evidence of a crime. Moreover, at the hearing on the motion, he asserted that he had never used the term "online" in his conversation with Source May and thus the detective's use of the term in the affidavit was an unwarranted inference drawn by the detective, and only the neutral magistrate is allowed to draw inferences. Therefore, Castagnola argued, the officers' reliance on the first warrant was unreasonable. Since the first search warrant led to the second search warrant, Castagnola reasoned, all evidence resulting from both warrants must be suppressed as fruit of the poisonous tree.

{¶ 17} At the suppression hearing, the detective testified that a search-warrant affidavit has two parts: the first part tells the court what the police are looking for, and the second part, titled "This Knowledge Is Based on the Following Facts," tells the court the facts that the police believe provide probable cause for the search.

{¶ 18} When asked what specific facts in the affidavit provided probable cause for seizing and searching Castagnola's computers, the detective referred to the following statement in the affidavit: "Castagnola [said] he found Maistros online in the clerk of courts because he got a parking ticket several years ago." The source of that information, according to the detective, was the recorded conversation between Castagnola and Source May.

{¶ 19} Thereafter, he was asked about the capability of a smart phone to search online. At first, he said he was uncertain of a smart phone's capability to conduct an online search. Then he admitted that he had used the Internet and that he had a smart phone but said that he had never used his smart phone to search the Internet. After acknowledging that a smart phone can access the Internet, he acknowledged that "theoretically," a smart phone could access online court records.

{¶ 20} Immediately after that exchange, the defense attorney told the detective that Castagnola had never said the word "online" during the recorded conversation. In response to that revelation, the detective said, "Well, I thought he did. I thought he did mention the word 'online.' * * * I could have sworn he did, yes."

{¶ 21} Counsel then asked him whether his sole basis for believing that a computer in Castagnola's home contained evidence of the alleged crimes was his using the term "online" during the conversation with Source May. After reviewing his report, the detective said:

> Well, the other thing that kind of led me to believe that he searched for him using the computer were statements that he had texted my source stating, "How many David Maistroses could there be who are attorneys," and—well, that was the one which is—which kind of made me believe that he had done searches for David Maistros in an online capacity.

{¶ 22} When asked whether someone could use the white pages to find such information, the detective stated, "Well, that's one way of doing it. But in today's day and age, everybody goes to a computer."

{¶ 23} The detective was then asked to describe how he believed Castagnola would have looked for Maistros's address using a computer. He replied that

Castagnola could have run a Google search of the name David Maistros or could have searched the online version of the white pages or a clerk of courts' website. When asked where on the computer such search information would be found, the detective indicated that from his "experience with other cases involving BCI and their analyzation of computers, * * * [he knew that a search] creates * * * a cookie, which will tell you where they have been, what searches they have done, things of that nature." And the detective explained that in a recent case he had worked on, such information was found on a computer a year after the Internet search had been conducted.

{¶ 24} The court then began questioning the detective and drew his attention back to the affidavit and the section titled "This Knowledge Is Based on the Following Facts." The court then began quoting from the affidavit, "Found this address and went to his house and did more than chief—," at which point the detective cut the court off and stated, "That was the other—that was the other line I was looking for when I—when I had mentioned: How many David Maistroses could be there—could there be who are attorneys?"

{¶ 25} Regardless of whether Castagnola had used the term "online" in his recorded conversation with Source May, the detective explained, he was still convinced that Castagnola had searched for Maistros's address on a computer. Thereafter, the following exchange occurred between the prosecutor and the detective:

Q. Everything that you were asking to search at that point in time, did you personally when you swore this affidavit believe that those items were reasonably expected to be there?

A. Yes. And only because Mr. Castagnola was sending numerous things via text which implicated himself in this crime to a guy that, in my opinion, he barely knew. So I assumed that—at that point, if he is just that blatant in sending these texts out and talking about it, that there is probably other items in the house that would be of evidentiary value.

{¶ 26} The trial court listened to the recording. In overruling the motion to suppress, the judge held that the search-warrant affidavit's two references to Castagnola's "online" efforts to locate Maistros's address had provided the issuing judge with a "substantial basis" for determining that probable cause existed to seize and search computers from Castagnola's home. Affording great deference to the issuing judge's determination, the trial court held:

In this age of "online" activities, particularly among people under the age of 40, such a standard [requiring that a search-warrant affidavit recite

specific facts concerning the use of a computer in the commission of a crime or in storing incriminating information] would require the issuing judge to ignore the totality of the circumstances rather than to take them into consideration. This is particularly so where, as here, the affidavit was replete with references to text messaging and at least two references to online research. The issuing court certainly could have drawn "reasonable inferences amounting to a fair probability" [*State v. George*, 45 Ohio St.3d 325, 330, 544 N.E.2d 640 (1989)] that cell phone data and messages are commonly backed up and/or synchronized to computer files. If nothing else * * * the content of the text messages received by the informant from Castagnola created a suspicion of criminal activity engaged in through the use of modern technology and provided the court a substantial basis for concluding that there was a fair probability that contraband or evidence of a crime would be found in the computers that were seized.

Moreover, defense counsel's concession * * * that the information in the affidavit would have justified the issuance of a search warrant authorizing the seizure of a cell phone that had Internet browser functionality * * * is utterly inconsistent with their position on this motion. * * * If the affidavit was sufficient to support a probable cause conclusion concerning the potential that a cell phone was used to conduct the Internet research, it certainly does so for a computer.

(Footnote deleted.)

{¶ 27} While agreeing with Castagnola that the word "online" was not used in the recorded conversation, the trial court found "[the detective's] paraphrase to be a fair characterization of the substance of the conversation and his explanation to be sufficient to demonstrate that there was no effort to mislead the judge." He concluded that the detective had acted with "objective good faith," and so excluding the evidence would have no deterrent effect on police misconduct.

{¶ 28} The retaliation case went to trial in May 2011, and Castagnola was found guilty on all six counts: retaliation (two counts), third-degree felonies; criminal damaging, a second-degree misdemeanor; vandalism, a fifth-degree felony; criminal trespass, a fourth-degree misdemeanor; and possessing criminal tools, a fifth-degree felony. After a bench trial on the pandering charges, fourth-degree felonies, the judge found Castagnola guilty of the ten charges.

{¶ 29} The judge sentenced Castagnola on both matters on October 18, 2011. Castagnola received a total of 30 months in prison and was classified as a Tier II sex offender.

{¶ 30} On appeal, Castagnola asserted that the trial court had erred in denying his motion to suppress the information found on his computer. Castagnola argued that the affidavit did not provide a substantial basis for concluding that

evidence of criminal activity would be found there. In a two-to-one decision, the court of appeals held that a search warrant can be secured for a device with Internet capabilities "once [police] have probable cause to establish that an online search has occurred in connection with unlawful activities." 2013-Ohio-1215, ¶ 14. It determined that the detective had reasonably surmised that Castagnola's investigation into Maistros's address had taken place online. It concluded that the warrant itself appeared to be based on probable cause and that the detective had not provided a false affidavit or recklessly disregarded the truth. One judge dissented, concluding that the "State's invasion into the Castagnola family home and seizure of all the computers was not supported by probable cause that 'evidence of a crime' would be found." *Id.* at ¶ 36 (Carr, J., dissenting).

{¶ 31} We accepted jurisdiction of Castagnola's appeal, in which he asserts the following two propositions of law:

> 1. In determining whether an affidavit is sufficient to establish probable cause for the issuance of a search warrant, the inquiry is limited to the four corners of the affidavit, or testimony taken by the magistrate under oath, and cannot be based on inferences drawn by the affiant unless those inferences were fairly communicated to the issuing magistrate.
>
> 2. A general exploratory search for evidence on a computer does not meet the particularity requirement of the Fourth Amendment. An affidavit and search warrant authorizing the seizure and search of a computer must describe with particularity the type of items to be sought, supported by probable cause to believe that those items will be found on the computer.

II.   Standard of Review

{¶ 32} The review of a motion to suppress is a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71. The very nature of the questions presented requires a case-by-case fact-driven analysis. *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 949, ¶ 14. Moreover, when a reviewing court determines that a warrant should not have been issued, it must then determine whether the good-faith exception applies, and that question is a question of law, subject to de novo review by the appellate court. *United States v. Leary*, 846 F.2d 592, 606 (10th Cir.1988).

III.   Legal Analysis

{¶ 33} "The security of one's privacy against arbitrary intrusion by the police—which is at the core of the Fourth Amendment—is basic to a free society." *Wolf*

*v. Colorado*, 338 U.S. 25, 27, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), *overruled on other grounds*, *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

{¶ 34} Central to the Fourth Amendment is the probable-cause requirement. While a probable-cause determination for an arrest warrant is similar in nature to that for a search warrant, a search-warrant inquiry is much more complex and presents special considerations. 2 LaFave, *Search and Seizure*, Section 3.1(b) (5th Ed.2012). Special considerations to be taken into account when determining whether to issue a search warrant include how stale the information relied upon is, when the facts relied upon occurred, and whether there is a nexus between the alleged crime, the objects to be seized, and the place to be searched. *Id.*, Section 3.7(a), (b), and (d).

{¶ 35} For a search warrant to issue, the evidence must be sufficient for the magistrate to conclude that there is a fair probability that evidence of a crime will be found in a particular place. The reviewing court then must ensure that the magistrate had a substantial basis for concluding that probable cause existed. *State v. George*, 45 Ohio St.3d 325, 329, 544 N.E.2d 640 (1989), citing *Illinois v. Gates*, 462 U.S. 213, 238–239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

{¶ 36} Castagnola challenges the validity of the search warrant on two bases. First, Castagnola argues that the search-warrant affidavit lacked probable cause because it set forth as an empirical fact an undisclosed inference drawn by the detective, thereby usurping the inference-drawing authority of the magistrate. Second, Castagnola argues that the search warrant violated the Fourth Amendment requirement of particularity, thereby rendering invalid the search of the computer.

A. First proposition of law: Inference

{¶ 37} Under his first proposition of law, Castagnola argues that the detective, by drawing the inference that Castagnola had looked for Maistros's address online, usurped the inference-drawing authority of the magistrate.

{¶ 38} A search warrant

shall issue on either an affidavit or affidavits sworn to before a judge of a court of record or an affidavit or affidavits communicated to the judge by reliable electronic means establishing the grounds for issuing the warrant. * * * [T]he affidavit shall name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located.

Crim.R. 41(C)(1).

{¶ 39} When oral testimony is not offered in support of a search-warrant affidavit, the magistrate determines the sufficiency by "evaluating only [the facts alleged within] the four corners of the affidavit and [applying] an objective reasonableness standard." *United States v. Richards*, 659 F.3d 527, 559 (6th Cir.2011), fn. 11 (Moore, J., concurring in judgment only), citing *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir.1996). On appeal, " 'the reviewing court is concerned exclusively with the statements contained within the affidavit itself.' " *Id.*, quoting *Weaver* at 1378. Courts have held that affiants may make reasonable inferences within search-warrant affidavits.

{¶ 40} Courts have recognized that affidavits that include a factual narrative will inevitably include a number of inferences drawn by the affiant. *People v. Caffott*, 105 Cal.App.3d 775, 782, 164 Cal.Rptr. 499 (1980). However, "the magistrate must be afforded the opportunity to test any significant inference drawn by the affiant." *People v. Smith*, 180 Cal.App.3d 72, 87, 225 Cal.Rptr. 348 (1986). The facts upon which those inferences are based must be disclosed to permit a magistrate's independent review. *State v. Bean*, 13 Ohio App.3d 69, 74, 468 N.E.2d 146 (6th Dist.1983). *See also State v. Garza*, 2013-Ohio-5492, 5 N.E.3d 89, ¶ 25 (3d Dist.).

{¶ 41} Similarly, magistrates may make reasonable inferences when deciding whether probable cause exists to issue a warrant. *Gates*, 462 U.S. at 240, 103 S.Ct. 2317, 76 L.Ed.2d 527; *State v. Hobbs*, 133 Ohio St.3d 43, 2012-Ohio-3886, 975 N.E.2d 965, ¶ 10; *State v. Jordan*, 11th Dist. Lake No. 97–L–211, 1998 WL 684231, *3 (Sept. 25, 1998) (O'Neill, J., dissenting). However, a magistrate cannot be viewed as neutral and detached if the magistrate issues a search warrant that is unknowingly based on the police officer's conclusions. *See State v. Joseph*, 25 Ohio St.2d 95, 96, 267 N.E.2d 125 (1971).

{¶ 42} We agree with the state that if the argument that Castagnola was making was that the statements in the affidavit were false, inaccurate, or perjured information akin to a misstatement or omission, we would simply apply

our precedent as established in *State v. McKnight,* 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 31. *McKnight* holds that when a defendant challenges the sufficiency of a search warrant on the basis that the affidavit contains a false statement affecting the magistrate's probable-cause determination, a reviewing court must consider whether those statements were made intentionally or with reckless disregard for the truth. However, the argument that Castagnola makes is not that the statements in the affidavit were false, but rather that the detective, by not disclosing that he had drawn an inference but instead presenting the inference as an empirical fact, usurped the inference-drawing function of the magistrate in determining probable cause. While no Ohio case has passed upon this issue, we are persuaded by the test outlined in *Caffott,* 105 Cal.App.3d 775, 164 Cal.Rptr. 499.

{¶ 43} In *Caffott,* the defendant challenged the validity of a search warrant on the basis that the affiant had "improperly usurped the 'inference-drawing' function of the magistrate." *Id.* at 778. The affidavit disclosed that the affiant was relying on information gathered from an untested source, known as Lydia, who stated that she had purchased heroin from the defendant on a number of occasions and had described the defendant's home and vehicle.

{¶ 44} The affidavit also disclosed that Lydia had been arrested for being under the influence of heroin the day after she claimed to have last purchased heroin from the defendant and that based upon the affiant's experience as a narcotics officer, the affiant knew that Lydia was a heroin user. The affidavit further stated that the affiant had verified the location of the defendant's house and vehicle and that the defendant had a prior arrest for possession of a controlled substance and was on probation for false representation to obtain prescription drugs.

{¶ 45} The affidavit also contained a summary of a monitored phone conversation between Lydia and the defendant. The affidavit stated:

> The conversation between the informant and the male person consisted of the informant asking if the male person had anything and a reply in the affirmative by the male person. The conversation was also heard to contain an arrangement between the informant and the male person on the telephone for the informant to come to the residence for the arrangements to purchase heroin.

*Caffott,* 105 Cal.App.3d at 778, 164 Cal.Rptr. 499.

{¶ 46} The affiant did not present a transcript of the call to the issuing magistrate. A review of the actual call demonstrated that neither Lydia nor the defendant had used the word heroin or a common street name for heroin.

{¶ 47} After hearing the tape, the trial court concluded that the affiant's summary of the telephone conversation was a "reasonable misstatement" and that even if the statement had been negligently made and should be excised from the affidavit, the remaining, accurate information in the affidavit was sufficient to establish probable cause. *Id.* at 780–781.

{¶ 48} In affirming the judgment of the trial court, the appellate court held:

> It is axiomatic that a search-warrant affidavit should leave any significant inference-drawing to the issuing magistrate. * * * At the least the magistrate must be afforded an opportunity to test for himself any significant inference drawn by the affiant; for this reason, "in preparing affidavits for search warrants the affiant must—under the compulsion of the Fourth Amendment—take particular care to state explicitly when he or she is drawing conclusions rather than reciting facts." (*People v. Superior Court* (*McCaffery*), supra, 94 Cal.App.3d [367] at pp. 369–370 [156 Cal.Rptr. 416 (1979)]). The facts which underlie any such significant inference should be disclosed to the magistrate.

105 Cal.App.3d at 781, 164 Cal.Rptr. 499.

{¶ 49} While search-warrant affidavits will inevitably include undisclosed inferences, under Fourth Amendment analysis, there is " 'a line between permissible police interpretation and usurpation of the magistrate's function.' " *Caffott* at 782, quoting *Rodriguez v. Superior Court*, 87 Cal.App.3d 822, 831, 151 Cal.Rptr. 233 (1978), fn. 3. If the defendant alleges only that the statement of fact (which is actually an undisclosed inference) is false, then the trial court should apply the established rules for factual misstatements and omissions. *Id.* at 782. However, Caffott alleged not that the statement was false but that the inference made by the detective was presented as an empirical fact and thus the detective usurped the magistrate's inference-drawing authority. *Id.* at 783. In that circumstance, the court of appeals directed, a trial court should do as follows:

> [D]etermine whether the hidden inference was so significant as to cross the line between permissible interpretation and usurpation. * * * A hidden inference should be deemed significant if it can be fairly concluded that it had a substantial bearing on the magistrate's determination of probable cause in each of two respects:

(1) *Relevance*: The more directly relevant the inference is to the magistrate's inquiry, the more substantial its bearing and the more significant it will be. * * *

(2) *Complexity*: The more complex and attenuated the logical process by which a relevant conclusion is reached, the more important it is that the magistrate receive an opportunity to test the inference for validity as part of his neutral and detached function. Conversely, an inference so straight-forward, and so patently within the affiant's area of expertise, as to be a matter of "routine interpretation" for the affiant is probably not so significant as to require the magistrate's review even though the conclusion thus reached is highly relevant.

(Italics sic.) *Id.* at 783.

{¶ 50} If the inference is significant, then the trial court should examine the affiant's animus. *Id.* at 784. If the affiant acted intentionally or with conscious indifference, then the warrant should be invalidated and the evidence suppressed. *Id.* at 785. However, if the affiant acted negligently, then the misstatement should be removed, the omitted underlying facts added, and the affidavit reassessed. *Id.*

{¶ 51} While holding that the "sensible course" would have been to furnish the magistrate with both the actual text of the call and the affiant's interpretation of the call, the appellate court found that the record supported the trial court's determination that the affiant's failure to furnish both was reasonable. *Id.* at 784. The appellate court also determined that the record supported the trial court's determination that the affiant's interpretation of the recorded conversation was reasonable.

{¶ 52} The affiant was an experienced narcotics officer who had personally interviewed Lydia, a heroin user who had been found to be under the influence of heroin within one day of her last reported purchase of heroin from the defendant. Lydia's recorded conversation with the defendant was short and plainly indicated that the parties were to meet at the defendant's home. Lydia had told the affiant that the parties' connection was heroin. The exchange between Lydia and the defendant ("You don't have nothing?" "Ya.") was susceptible of a reasonable interpretation that the defendant had heroin for sale. *Id.* at 779, 784, and fn. 1.

{¶ 53} As in *Caffott*, the recording of Castagnola's conversation with Source May was not provided to the magistrate. Unlike in *Caffott*, however, neither the trial court nor the appellate court in this case examined the issue whether the detective, by presenting his inference as an empirical fact, had usurped the magistrate's inference-drawing authority in determining probable cause.

{¶ 54} The trial court held that the two separate references in the affidavit to "online" provided the issuing magistrate with a "substantial basis for concluding that probable cause existed to justify a search for and/or seizure of the computers found at defendant's residence." Moreover, while acknowledging that Castagnola did not use the word "online" on the recording, the trial court held that the good-faith exception to the exclusionary rule applied because he found credible the affiant's testimony at the suppression hearing as to "how he interpreted the substance of what was said" and "how he attempted to paraphrase the same in his affidavit."

{¶ 55} Similarly, the Ninth District Court of Appeals, though conceding that the word "online" was never used by Castagnola on the recording, affirmed the trial court's judgment, holding that under the totality of the circumstances, a substantial basis was provided for the issuing magistrate to conclude that Castagnola had used a computer to find David Maistros's address.

{¶ 56} Since neither court addressed the underlying issue, we reject their probable-cause determinations and consider the question here. In turning to the test enunciated in *Caffott*, we first determine whether the inference was "so significant as to cross the line between permissive interpretation and usurpation," considering both the relevance and the complexity of the undisclosed inference. *Caffott*, 105 Cal.App.3d at 783, 164 Cal.Rptr. 499.

{¶ 57} Numerous statements in the search-warrant affidavit support the conclusion that Castagnola had searched for Maistros's address, but only the two statements containing the "online" inference linked the search for Maistros's address to the Internet. Because without those two statements, there is nothing in the search-warrant affidavit that supports a probable-cause finding that Castagnola used a computer in furtherance of the alleged crimes, that the computer he used was located in his residence, and that the computer still had evidence on it, the "online" inference must also support these additional inferences. Because of the inference building required to support the probable-cause determination that there was a fair probability that evidence of a crime would be found on a computer in Castagnola's home, we find that the "online" inference was directly relevant to the magistrate's determination.

{¶ 58} We now consider the complexity of the detective's conclusion that Castagnola had searched online for Maistros's address. We summarily reject the assertion that the method of search was so obvious that the "online" inference was a matter of "routine interpretation" for the affiant. *See id.* at 783. As explained above, the "online" inference was required to provide the nexus between the alleged crimes and the items to be searched for in Castagnola's home (the computers). This determination is so profoundly significant that the issuing

magistrate should have been given the opportunity to test the validity of the undisclosed inference.

{¶ 59} We find the undisclosed inference so significant that it "cross[ed] the line between permissible interpretation and usurpation" of the magistrate's inference-drawing authority. *Caffott*, 105 Cal.App.3d at 783, 164 Cal.Rptr. 499. However, this conclusion does not end our analysis. We next consider the affiant's animus. *Id.* at 784–785.

{¶ 60} The detective seemed genuinely surprised that Castagnola had not used the word "online" on the recording. In response to this revelation, he replied, "Well, I thought he did. I thought he did mention the word 'online.' * * * I could have sworn he did, yes." Even Castagnola did not believe that the detective's inclusion of the word "online" in the affidavit was an act of misfeasance or malfeasance. On this record, we do not find that the detective intentionally usurped the magistrate's inference-drawing authority in making the probable-cause determination or that he proceeded with conscious indifference.

{¶ 61} Since we have determined that the affiant negligently usurped the magistrate's inference-drawing authority, *Caffott* requires us to excise the inference, insert the omitted underlying facts, and reassess the affidavit for probable cause. *Id.* at 785. Removing the references to "online" and inserting the omitted statement from the recording that the detective had relied on to conclude that Castagnola had searched online (Castagnola's statement that he had had to "look up" Maistros's address on court records), we find, based on the totality of the circumstances, that there was no probable cause to believe that a computer in Castagnola's residence was used in furtherance of the alleged crimes.

{¶ 62} The affidavit provides the following information: The affiant had over 14 years of law-enforcement experience, with eight of those years in the drug unit. Twenty-five incidents of criminal mischief involving intentional damage to vehicles in Twinsburg and Reminderville had occurred in the two months prior to the search-warrant request. A confidential informant had given police ten text messages originating from a phone number assigned to Castagnola. The text messages indicated that Castagnola had found Maistros's home and law office and that he did not believe that there could be more than one person by that name who was also a lawyer. In the text messages, Castagnola admitted having egged and damaged Maistros's vehicles. The recording that the magistrate did not hear reveals Castagnola saying that to find Maistros's address, he had had to "look up" Maistros on court records and had found that a David Maistros had received a parking ticket. He also said that he had verified that he had the correct address by checking the mail in the mailbox.

{¶ 63} In short, while there was probable cause to believe that Castagnola had searched for Maistros's address, the method of his search was not clear. We affirmatively reject the trial court's assertion that in determining whether an affidavit supports probable cause to issue a search warrant, a magistrate can infer "online" activities by people of a certain age. We further reject the trial court's supposition that statements sent by text message admitting criminal activity create a substantial basis for concluding that evidence of a crime will be found on a computer. Similarly, we are not inclined to leap to the conclusion that the information stored on a phone will necessarily be backed up on a computer. Although we are in the computer age, records of court activity still exist in paper form and are available to the public in clerk of courts' offices around the state.

{¶ 64} The dissent dismisses *Caffott* because it is from an "out-of-state, intermediate court." Dissenting opinion at ¶ 117. However, we have consistently looked to out-of-state cases when considering issues of first impression and have adopted the reasoning in those cases when the opinions were persuasive and on point. In fact, when writing for the majority in prior cases, the author of the dissent has sought guidance from out-of-state authority under similar circumstances. *E.g., Schwering v. TRW Vehicle Safety Sys. Inc.*, 132 Ohio St.3d 129, 2012-Ohio-1481, 970 N.E.2d 865, ¶ 17 (citing cases from Minnesota and Illinois).

{¶ 65} Having determined that the affiant negligently usurped the inference-drawing authority of the magistrate and that under the totality of the circumstances, the search warrant was not supported by probable cause, the next step of our analysis is typically to consider whether the good-faith exception to the exclusionary rule applies. *See United States v. Leon,* 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *Herring v. United States,* 555 U.S. 135, 144, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009). However, as we explain in further detail in our discussion of the exclusionary rule below, a search warrant that is invalidated on the basis that the search-warrant affidavit was negligently written does not per se require suppression of the evidence. *Id.* Therefore, we turn to Castagnola's second challenge to the search warrant.

**B.   Second proposition of law:  Particularity**

{¶ 66} Under his second proposition of law, Castagnola argues that the particularity requirement of the Fourth Amendment applies not only to the seizure of the computer but also to the search of the computer. The state asserts that Castagnola waived this issue by failing to raise it below and that under the circumstances of this case, the warrant was sufficiently particular.

{¶ 67} "[Generally,] this court will not consider arguments that were not raised in the courts below." *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 279, 617 N.E.2d 1075 (1993). However,

"[w]hen an issue of law that was not argued below is implicit in another issue that was argued and is presented by an appeal, we may consider and resolve that implicit issue." *Id.*

{¶ 68} The dissent argues that Castagnola failed to preserve the particularity issue in the court of appeals by focusing on the detective's inference rather than on the warrant's lack of particularity. However, as set forth below, Castagnola argued particularity in both the trial and appellate courts. Furthermore, *State v. Price,* 60 Ohio St.2d 136, 398 N.E.2d 772 (1979), which is cited in the dissent, does not prevent us from considering a proposition of law even if the issue was not raised below. *Price* states, "The Supreme Court will not *ordinarily* consider a claim of error that was not raised in any way in the Court of Appeals and was not considered or decided by that court." (Emphasis added.) *Id.* at paragraph two of the syllabus.

{¶ 69} Castagnola challenged the particularity of the search warrant both at the suppression hearing and in his brief before the Ninth District Court of Appeals, in which he argued, "Essentially, the trial court's decision boils down to a holding that someone's sending a text message creates probable cause to seize and search his computer. While this would undoubtedly prove a boon to law enforcement, it is impossible to reconcile with the 'particularity' requirement of the Fourth Amendment, or the privacy concept that is at its core."

{¶ 70} As the dissenting opinion in the court of appeals pointed out, the probable-cause and particularity requirements overlap. " 'There is interplay between probable cause, particularity, and reasonableness.' " 2013-Ohio-1215, 2013 WL 1285963, ¶ 46 (Carr, J., dissenting), quoting *In re Appeal of Application for Search Warrant,* 193 Vt. 51, 2012 VT 102, 71 A.3d 1158, ¶ 33. Other courts have also found the issues to be inseparable. *See, e.g., United States v. Burgess,* 576 F.3d 1078, 1094 (10th Cir.2009). Therefore, the particularity issue is implicit in a probable-cause argument, which Castagnola clearly raised below, so he did not waive the particularity issue that he raises here in his second proposition of law.

{¶ 71} Since neither the trial court nor the appellate court in this case addressed the issue of particularity, we reject their determination of probable cause and examine the issue here. The scope of our inquiry is limited to whether the search warrant particularly described what was to be searched for on Castagnola's computer.

{¶ 72} It is important to note that regarding the search warrant that is the subject of this case, that single warrant was used first to search the house in order to seize the computer and then was used for a second search, the search of the computer itself. To reiterate, the Fourth Amendment to the United States Constitution provides, "[N]o Warrants shall issue * * * [except those] particular-

ly describing the place to be searched, and the persons or things to be seized." "[T]he presumptive rule against warrantless searches applies with equal force to searches whose only defect is a lack of particularity in the warrant." *Groh v. Ramirez*, 540 U.S. 551, 559, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004).

{¶ 73} We cannot overstate the variety and complexity of the considerations that a neutral and detached officer must make when determining whether the particularity requirement of the Fourth Amendment is met. There are myriad factors, all of which are driven by the nature or character of the item to be seized and searched. 2 LaFave, *Search and Seizure*, Section 4.6(a).

{¶ 74} Moreover, "[t]he modern development of the personal computer and its ability to store and intermingle a huge array of one's personal papers in a single place increases law enforcement's ability to conduct a wide-ranging search into a person's private affairs, and accordingly makes the particularity requirement much more important." *United States v. Otero*, 563 F.3d 1127, 1132 (10th Cir.2009). Courts have held that the Fourth Amendment does not require heightened protections for computers, nor does it diminish its protections because of the challenges of searching them. *Richards*, 659 F.3d at 538. The "bedrock principle" is "reasonableness on a case-by-case basis." *Id.*

{¶ 75} According to the state, the search warrant at issue here was as particularized as the facts of this case reasonably permitted. The state contends that the warrant identifies the offenses charged, identifies the items to be searched for, and "indicates that the listed items are connected with the [listed] offenses." Therefore, the state alleges, the search warrant instructed officers to "search only" for items connected to the crimes charged. We disagree.

{¶ 76} The warrant is separated into distinct sections. Under the title "There is now being concealed certain property, to-wit," the warrant lists the items subject to seizure from Castagnola's residence and persons and vehicles at the residence as follows:

> Records and documents either stored on computers, ledgers, or any other electronic recording device to include hard drives and external portable hard drives, cell phones, printers, storage devices of any kind, printed out copies of text messages or emails, cameras, video recorders or any photo imaging devices and their storage media to include tapes, compact discs, or flash drives.

{¶ 77} Since the issue we address is the search of Castagnola's computer, the language "[r]ecords and documents stored on computers" is the focal point. The

plain language of this paragraph demonstrates that there is no limitation on what records and documents were to be searched for in Castagnola's computer.

{¶ 78} A separate section, which does not expressly or indirectly relate back to the first, is titled "If found, said items will be seized and used as evidence in the prosecution of." Under that title, the following crimes are listed: retaliation, criminal trespassing, criminal damaging, and possession of criminal tools. The state argues that the warrant language "If found, said items will be seized and used as evidence in the prosecution of" establishes a limitation on the search of the computer. However, this interpretation belies the language of the search warrant, and in this case, is contrary to law.

{¶ 79} Courts addressing the particularity requirement of the Fourth Amendment are concerned with two issues. The first issue is whether the warrant provides sufficient information to "guide and control" the judgment of the executing officer in what to seize. *United States v. Upham,* 168 F.3d 532, 535 (1st Cir.1999). The second issue is whether the category as specified is too broad in that it includes items that should not be seized. See *United States v. Kow,* 58 F.3d 423, 427 (9th Cir.1995).

{¶ 80} A search warrant that includes broad categories of items to be seized may nevertheless be valid when the description is " ' " "as specific as the circumstances and the nature of the activity under investigation permit." ' " *Guest v. Leis,* 255 F.3d 325, 336 (6th Cir.2001), quoting *United States v. Henson,* 848 F.2d 1374, 1383 (6th Cir.1988), quoting *United States v. Blum,* 753 F.2d 999, 1001 (11th Cir.1985). Warrants that fail to describe the items to be seized with as much specificity as the government's knowledge and the circumstances allow are "invalidated by their substantial failure to specify as nearly as possible the distinguishing characteristics of the goods to be seized." *United States v. Fuccillo,* 808 F.2d 173, 176 (1st Cir.1987).

{¶ 81} Because computers can store a large amount of information, "there is a greater potential for the 'intermingling' of documents and a consequent invasion of privacy when police execute a search for evidence on a computer. * * * Officers must be clear as to what it is they are seeking on the computer and conduct the search in a way that avoids searching files of types not identified in the warrant." *United States v. Walser,* 275 F.3d 981, 986 (10th Cir.2001). "[P]ractical accuracy rather than technical precision" is the operative consideration. *United States v. Dorrough,* 927 F.2d 498, 500 (10th Cir.1991).

{¶ 82} Here, the search warrant did not contain any description or qualifiers of the "records and documents stored on the computer" that the searcher was permitted to look for. The next section of the search warrant, which delineated that if any records and documents were seized, those items would be used to prosecute Castagnola for the crimes of retaliation, criminal trespassing, criminal

damaging, and possession of criminal tools, added nothing to narrow the search. As written, this search warrant failed to address both concerns that courts consider when determining whether a warrant satisfies the particularity requirement of the Fourth Amendment.

{¶ 83} First, as evidenced by the testimony of the BCI analyst, the language of the search warrant did not "guide and control" her judgment as to what was to be seized on the computer. *See Upham*, 168 F.3d at 535. She indicated that Castagnola's computer was brought in for a case involving "menacing, threatening, and intimidation." The analyst read the case synopsis and the search-warrant affidavit and then looked at all the information on the hard drive "looking for any evidence of intimidation of David Maistros * * * and anything associated with that." Therefore, the determination on what to seize was within her discretion.

{¶ 84} Second, the broad language of this search warrant clearly included items that were not subject to seizure. The search warrant permitted her to examine every record or document on Castagnola's computer in order to find any evidence of the alleged crimes. In processing the hard drive, she testified, she was going through the "documents, images, videos."

{¶ 85} The state, without addressing Castagnola's argument that the warrant lacked particularity as to "what" was to be seized in the computer, asserts that "[n]othing in the record suggests that the police knew ahead of time precisely where or on which devices those items were stored." However, the particularity issue we address here does not relate to where the information was stored but rather "what" evidence the detective had a fair probability of believing existed on Castagnola's computers.

{¶ 86} In this case, the detective believed that Castagnola had found Maistros's address online and that evidence of the online search would be useful in the prosecution of the alleged offenses. The detective testified at the suppression hearing that in addition to a general Google or online-white-pages search for Maistros's name, he believed that Castagnola may have searched a clerk of courts' website for information about Maistros because Castagnola had mentioned in his conversation with Source May that he had discovered that Maistros had received a parking ticket years earlier. The detective also testified that from his previous experience, he knew that an online search would create "a cookie, which will tell you where [the persons who have used the computer] have been, what searches they have done, things of that nature."

{¶ 87} Under the Fourth Amendment, these details regarding the records or documents stored on the computer should have been included in the search warrant to guide and control the searcher and to sufficiently narrow the category of records or documents subject to seizure. Moreover, this degree of specificity

was required, since the circumstances and the nature of the activity under investigation permitted the affiant to be this specific. *Guest*, 255 F.3d at 336.

{¶ 88} In urging this court to find that the search warrant sufficiently particularized the items to be searched for, the state provides a breadth of authority rejecting the notion that a search warrant must contain a restrictive protocol, methodology, or other strategy for conducting the search in order to satisfy the Fourth Amendment. We agree that the Fourth Amendment does not require a search warrant to specify restrictive search protocols, but we also recognize that the Fourth Amendment does prohibit a "sweeping comprehensive search of a computer's hard drive." *Walser*, 275 F.3d at 986. The logical balance of these principles leads to the conclusion that officers must describe what they believe will be found on a computer with as much specificity as possible under the circumstances. This will enable the searcher to narrow his or her search to only the items to be seized. Adherence to this requirement is especially important when, as here, the person conducting the search is not the affiant. *See generally United States v. Gahagan*, 865 F.2d 1490, 1498–1499 (6th Cir.1989).

{¶ 89} "[W]e do not intend to make the process of determining the sufficiency of an affidavit a hypertechnical one." *State v. Kinney*, 83 Ohio St.3d 85, 95, 698 N.E.2d 49 (1998). We understand that police and magistrates are not required to do the impossible. However, the specific evidence sought must be clearly stated: "As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 72 L.Ed. 231 (1927). "[A] search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *Massachusetts v. Sheppard*, 468 U.S. 981, 988, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), fn. 5.

{¶ 90} Having determined that the search warrant lacked particularity and was therefore invalid, we must now consider whether the evidence obtained in execution of the invalid search warrant should be suppressed.

IV. The Exclusionary Rule and the Good–Faith Exception

{¶ 91} Castagnola argues that the good-faith exception to the exclusionary rule does not apply in this case. We agree.

{¶ 92} The exclusionary rule is a judicially created remedy for Fourth Amendment violations. *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). The question whether the evidence seized in violation of the Fourth Amendment should be excluded is a separate question from whether the Fourth Amendment was violated. *Leon*, 468 U.S. at 906, 104 S.Ct. 3405, 82 L.Ed.2d 677. "The exclusionary rule should not be applied to suppress evidence obtained by police officers acting in objectively reasonable, good faith reliance on

a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid." *State v. Wilmoth,* 22 Ohio St.3d 251, 490 N.E.2d 1236 (1986), paragraph one of the syllabus.

{¶ 93} The "inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon* at 922, fn. 23. In making this determination, a court should consider the total circumstances and assume that the executing officers have a "reasonable knowledge of what the law prohibits." *Id.* at 919, fn. 20. When considering a facially invalid warrant, the trial court "must also review the text of the warrant and the circumstances of the search to ascertain whether the agents might have 'reasonably presume[d] it to be valid.' " *Leary,* 846 F.2d at 607, quoting *Leon* at 923.

{¶ 94} We therefore review whether the officer associated with the search should have known that the warrant was invalid.

{¶ 95} Our analysis is an objective one and does not depend on the subjective knowledge of any individual police officer. *Herring,* 555 U.S. at 135, 145–146, 129 S.Ct. 695, 172 L.Ed.2d 496. However, because Fourth Amendment violations do not automatically result in application of the exclusionary rule, before applying it, we must consider the reason that the judiciary created it.

{¶ 96} The purpose of the exclusionary rule is to deter police misconduct. If officers act in good-faith reliance on a warrant that is later determined to be invalid, suppressing the evidence obtained from the search would not serve the purpose of the exclusionary rule. *State v. Hoffman,* 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.3d 993, ¶ 46.

{¶ 97} Courts may apply the exclusionary rule only when its benefits outweigh the societal risks. *Herring* at 141. The application of the exclusionary rule is "restricted to those areas where its remedial objects are most efficaciously served." *Leon,* 468 U.S. at 908, 104 S.Ct. 3405, 82 L.Ed.2d 677. "[A]n assessment of the flagrancy of the police misconduct constitutes an important step in the calculus." *Id.* at 911. The exclusionary rule should not be applied when " 'the official action was pursued in complete good faith' " because it would have no deterrent effect. *George,* 45 Ohio St.3d at 331, 544 N.E.2d 640, quoting *Leon* at 919.

{¶ 98} However, an officer's reliance on the warrant must be "objectively reasonable." *Id.* at 922. Suppression remains an appropriate remedy (1) when an officer relies on a warrant that is based on an affidavit " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable' " and (2) when a warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing

officers cannot reasonably presume it to be valid." *Id.* at 923, quoting *Brown v. Illinois,* 422 U.S. 590, 611, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part).

{¶ 99} If the only problem in this case were the detective's negligence—the undisclosed inference in the search-warrant affidavit—then application of the exclusionary rule would not promote the purpose of the rule. One instance of police negligence does not justify the exclusion of the evidence. *Herring* at 147.

{¶ 100} However, the negligent inclusion of the undisclosed inference is just the tip of the iceberg here. The affidavit was so lacking in indicia of probable cause and the warrant was so facially deficient in failing to particularize the items to be searched for on Castagnola's computer that the detective could not have relied on it in objective good faith.

{¶ 101} Quite simply, the search-warrant affidavit was not based on evidentiary fact. It was based on layered inferences. Moreover, the search warrant failed to particularly describe the items to be searched for on Castagnola's computer with as much specificity as the detective's knowledge and the circumstances allowed. Perhaps the most telling flaw of the warrant request was revealed at the end of the detective's testimony at the suppression hearing:

> Q. Everything that you were asking to search at that point in time, did you personally when you swore this affidavit believe that those items were reasonably expected to be there?
>
> A. Yes. And only because Mr. Castagnola was sending numerous things via text which implicated himself in this crime to a guy that, in my opinion, he barely knew. *So I assumed that—at that point, if he is just that blatant in sending these texts out and talking about it, that there is probably other items in the house that would be of evidentiary value.*

(Emphasis added.)

{¶ 102} A search cannot depend on mere suspicion. *Gates,* 462 U.S. at 276, 103 S.Ct. 2317, 76 L.Ed.2d 527. Although in the ordinary case, an officer cannot question a magistrate's probable-cause determination, this is no ordinary case. Here, the detective did not have a reasonable basis to believe that the warrant was valid. Where a privacy intrusion is based on blatant conjecture that evidence exists on a computer in a residence because of a text-message admission of vandalism, the societal benefits of suppressing the evidence outweigh the societal risks of harm.

{¶ 103} The dissent cites *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). However, *Franks* is not relevant here. In *Franks,* the United States Supreme Court held that if a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id.* at 155–156. *Franks* is a pre-*Gates* case addressing when a specific type of hearing that supplements a suppression hearing must be held. It has no application here because in this case, the warrant was not valid on its face and the search and seizure were in violation of the Fourth and Fourteenth Amendments.

{¶ 104} This is a difficult case, and applying the exclusionary rule to strip the state of reliable evidence of wrongdoing seems harsh, particularly because Castagnola's actions that led to the search warrant were despicably malicious and the evidence discovered as a result of the search is horrifically objectionable. "There is always a temptation in criminal cases to let the end justify the means, but as guardians of the Constitution, we must resist that temptation." *State v. Gardner,* 135 Ohio St.3d 99, 2012-Ohio-5683, 984 N.E.2d 1025, ¶ 24.

{¶ 105} We leave for another day the question whether the Fourth Amendment permits the seizure of any device capable of searching the Internet once a magistrate finds probable cause to believe that a suspect conducted an online search in furtherance of criminal activity.

V.   Conclusion

{¶ 106} We hold that when no oral testimony is presented to the neutral and detached magistrate in conjunction with an affidavit for a search warrant, the probable-cause determination is based on the four corners of the document. We further hold that when a defendant's motion to suppress evidence challenges the validity of a search warrant, claiming that an undisclosed inference stated as an empirical fact usurped the magistrate's inference-drawing authority, a reviewing court should consider (1) whether the inference was so significant that it crossed the line between permissible interpretation and usurpation of the magistrate's role in finding probable cause, considering both the relevance and the complexity of the inference and (2) whether the affiant intended the inference to deprive the magistrate of his or her authority to determine whether probable cause existed. We further hold that the particularity requirement of the Fourth Amendment applies to the search of a computer and requires a search warrant to particularly describe the items believed to be contained on the computer with as much specificity as the affiant's knowledge and the circumstances of the case allow and

that the search be conducted in a manner that restricts the search for the items identified.

{¶ 107} Finally, we conclude that in this case, the affiant negligently usurped the magistrate's inference-drawing authority in determining whether there was probable cause to issue the search warrant. Although one act of negligence does not justify the exclusion of evidence seized in good faith, we suppress the evidence at issue here because the search-warrant affidavit lacked indicia of probable cause and the search warrant failed to state with particularity the items to be searched for on Castagnola's computer to such an extent that the detective could not have relied upon it in good faith.

{¶ 108} We reverse the judgment of the appellate court and order that the evidence obtained in executing the invalid search warrant be suppressed. We remand the matter to the trial court for proceedings consistent with this opinion.

Judgment reversed.

PFEIFER, O'DONNELL, and O'NEILL, JJ., concur.

O'CONNOR, C.J., and LANZINGER and FRENCH, JJ., dissent.

---

LANZINGER, J., dissenting.

{¶ 109} I cannot agree that we should break with precedent and adopt the reasoning of a California appellate court opinion to conclude that the officer in this case "negligently usurped the inference-drawing authority of the magistrate," majority opinion at ¶ 65, and caused an invalid search warrant to be issued. Nor would I address the question of particularity that appellant, Nicholas Castagnola, failed to present to the trial or appellate court. I therefore respectfully dissent and would uphold the judgment of the court of appeals.

*The proposition of law on particularity was forfeited*

{¶ 110} Castagnola did not argue either in his motion or at the suppression hearing that the warrant failed to particularly describe the scope of the search of the computer. The majority states that the particularity issue is implicit in the probable-cause argument and notes a single reference to "particularity" in Castagnola's merit brief to the Ninth District as a reason to excuse his failure to raise this issue. Majority opinion at ¶ 69–70. I do not agree.

{¶ 111} Castagnola raised the trial court's denial of his motion to suppress in the first of his four assignments of error, arguing only that the computer should not have been seized. He did not mention the scope of the computer search or say that the warrant failed to properly guide and control the forensic analyst or argue that the search was general or exploratory. He contended only that the

computer should not have been seized, because it had no nexus to the crime with which he was charged. In any event, because Crim.R. 47 requires a motion to suppress to state the specific grounds upon which it is made, it is insufficient to say that the issue was implicitly raised in another argument. Because the particularity issue was raised for the first time before us, we should not address it. *See State v. Price*, 60 Ohio St.2d 136, 398 N.E.2d 772 (1979), paragraph two of the syllabus.

### *Probable cause exists under the totality of the circumstances*

{¶ 112} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution provide that a warrant can be issued only if probable cause for the warrant is supported by an oath or affirmation. When determining whether to issue a warrant, a magistrate must simply "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). As long as the "magistrate had a substantial basis for concluding that probable cause existed," a reviewing court should uphold the warrant. *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph two of the syllabus. We have called this standard for reviewing warrants the "totality-of-the-circumstances standard."

{¶ 113} We recently reiterated that totality of the circumstances is the proper standard of review to determine whether probable cause existed to issue a search warrant. *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123.

> The Supreme Court of the United States has provided that in determining whether a search warrant was issued upon a proper showing of probable cause, reviewing courts must examine the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for * * * conclud[ing]' that probable cause existed." *Id.* at 238–239, quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), *overruled on other grounds*, *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). The *Gates* court stated that the issuing magistrate's duty is to determine whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place * * *." *Id.* at 238.

*Id.* at ¶ 13.

{¶ 114} Castagnola challenges the use of the word "online" in the detective's affidavit in support of the search warrant. In describing the discussion between the confidential informant and Castagnola, the detective stated in his affidavit:

> Castagnola then says that he found Maistros online in the clerk of courts because he got a parking ticket several years ago. Castagnola said that he also found that Maistros law offices were in Chagrin Falls and went through Maistros's mailbox to confirm that Maistros did live at the address he found for him online.

{¶ 115} For a search warrant that appears to be valid on its face to run afoul of the Fourth Amendment, a defendant must show by a preponderance of the evidence that the affiant made a false statement, either "intentionally, or with reckless disregard for the truth." *Franks v. Delaware,* 438 U.S. 154, 155–156, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). We have said that " '[r]eckless disregard' means that the affiant had serious doubts of an allegation's truth." *State v. Waddy,* 63 Ohio St.3d 424, 441, 588 N.E.2d 819 (1992). Negligent or innocent mistakes in an affidavit will not invalidate a search warrant. *See Franks* at 171. Contrary to what the majority states in the opinion, Castagnola *does* argue that use of the word "online" is a false statement—he denies saying that word in the recorded conversation. Majority opinion at ¶ 42. But although the word "online" was not used in the recorded conversation, the detective's affidavit does not claim to be quoting Castagnola. The detective testified that he honestly believed that Castagnola had made such a reference. And at the suppression hearing, defense counsel conceded that there was not misfeasance or malfeasance on the part of the detective. This in and of itself makes a *Franks* violation impossible.

{¶ 116} Castagnola also alleges, however, that the detective usurped the role of the magistrate by inferring that the address had been found online and stating this to be an empirical fact. He contends that it was the magistrate's job to determine whether the evidence justified the inference that Castagnola had conducted the search for the address online.

{¶ 117} Without fully discussing our standard of reviewing the totality of the circumstances, the majority adopts the reasoning of a 35–year–old, out-of-state intermediate court to change the law of Ohio. Majority opinion at ¶ 42–64, relying

28

on *People v. Caffott,* 105 Cal.App.3d 775, 164 Cal.Rptr. 499 (1980).[2]  Under the majority's approach, a negligent misstatement within an affidavit causes the entire affidavit to be subject to reassessment without any deference to the issuing magistrate.  *Caffott*'s test to determine the relevance and complexity of a "hidden inference" is inconsistent with established case law and appears to circumvent the holding in *Franks* that a facially valid search warrant will not be set aside unless the affiant makes a false statement intentionally or with reckless disregard for the truth.  Requiring an affiant to present a hypertechnical recitation of the facts to obtain a search warrant is unnecessary.  A magistrate can question an affiant to determine whether probable cause exists if the facts stated are unclear.  The *Franks* rule that invalidates warrants that are based on intentional or reckless misstatements already guards truth and promotes honesty.  There is no reason to abandon precedent.  In *George,* 45 Ohio St.3d 325, 544 N.E.2d 640, we stated:

> It is also important to note that the totality-of-the-circumstances analysis of *Gates* not only addresses the original probable cause determination of the magistrate but carefully limits the role of a reviewing court as well to that of simply " * * * ensur[ing] that the magistrate had a 'substantial basis for * * * concluding' that probable cause existed.  * * * " *Id.* [462 U.S.] at 238–239 [103 S.Ct. 2317, 76 L.Ed.2d 527].

*Id.* at 329.  We should not second-guess the issuing magistrate by looking for "hidden inferences."

{¶ 118} I would hold that under the totality of the circumstances, the magistrate had a substantial basis for issuing the search warrant.  In the affidavit, the detective outlined the offenses alleged to have been committed by the 24–year-old Castagnola.  The detective quoted the text messages Castagnola had sent and summarized the recorded conversation Castagnola had had with a confidential informant, both of which implicated Castagnola in the offenses.  Although the word "online" was not used in the recorded conversation, Castagnola did state that he had "look[ed] up on court records" and found a parking ticket with Maistros's address.  Based on Castagnola's age, the text messages that he sent, and the statements he actually made, I agree with the trial court that the detective's paraphrase was "a fair characterization of the substance of the conversation."  For a search warrant to issue there needs to be only a fair probability that evidence will be found in a particular place.  Given today's

2.  *People v. Caffott,* 105 Cal.App.3d 775, 164 Cal.Rptr. 499 (1980), has been cited in later opinions only three times, and not once after 1986.

ubiquitous use of technology to obtain information, it is more than likely that Castagnola found the information online.

{¶ 119} For these same reasons, I also strenuously dissent from the majority's determination that the warrant was not executed in good faith. The affidavit in support of the warrant stated that a 24–year–old man had sent several text messages admitting his involvement in the egging of vehicles belonging to David Maistros and that during a conversation with a confidential informant he had stated that he had found Maistros's address online. A reasonable officer would have no reason to question the validity of the search warrant.

{¶ 120} I respectfully dissent.

O'CONNOR, C.J., and FRENCH, J., concur in the foregoing opinion.

---

Sherri Bevan Walsh, Summit County Prosecuting Attorney, and Heaven Di-Martino, Assistant Prosecuting Attorney, for appellee.

Russell S. Bensing, for appellant.