M. POWELL, J., concurring in part and dissenting in part.
{¶ 86} The search warrant issued in this case authorized the search of the entire contents of Swing's personal cell phone without probable cause for such a broad search, thus violating the Fourth Amendment's particularity requirement. I therefore dissent from the majority's affirmance of the trial court's denial of Swing's motion to suppress certain evidence seized from his personal cell phone.
{¶ 87} As noted, the Fourth Amendment provides that
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
{¶ 88} The Fourth Amendment requires search warrants (1) to be supported by probable cause, and (2) to particularly describe the places and things to be searched and seized. The probable cause and particularity requirements are not independent of one another. Rather, probable cause and particularity are two sides of the same coin and analysis of one necessarily involves consideration of the other. As the Ohio Supreme Court observed, " 'There is interplay between probable cause, particularity, and reasonableness.' Other courts have also found the issues to be inseparable. Therefore, the particularity issue is implicit in a probable-cause argument." (Citations omitted.) State v. Castagnola , 145 Ohio St. 3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 70.
{¶ 89} There are two aspects of the particularity requirement. "The first issue is whether the warrant provides sufficient information to 'guide and control' the judgment of the executing officer in what to seize. The second issue is whether the category as specified is too broad in that it includes items that should not be seized." (Citations omitted.) Id. at ¶ 79.
{¶ 90} As to the first aspect, it has been explained that it involves "whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not, and * * * whether the government *856 was able to describe the items more particularly in light of the information available to it at the time the warrant was issued." (Citations omitted.) United States v. Spilotro , 800 F.2d 959, 963 (9th Cir.1986).
{¶ 91} The second aspect involves "whether probable cause exists to seize all items of a particular type described in the warrant." Id. In other words, if probable cause does not support the seizure of a particular item, then the inclusion of that item in the search warrant violates the particularity requirement. It is upon this second aspect of the particularity requirement that the search warrant is lacking.
{¶ 92} The search warrant in this case authorized the executing officer to search for and seize from Swing's personal cell phone:
1) Any and all information pertaining to the listed mobile devices; such as, A) All stored communications or files, including voice mail, email, digital images, contact lists, and any other files associated with the mobile device(s) which are no longer in transmission. B) Media stored in the mobile device(s) to include photos, videos which are no longer in transmission. C) Text Messaging, to include sent, received and drafts which are no longer in transmission. 2) Examination and search of the above mentioned mobile device(s) is for stored files, data, images, software, operating systems, deleted files, systems configurations, date and time, unallocated and slack space for evidence.
{¶ 93} Essentially, the search warrant authorized a search for everything stored upon Swing's personal cell phone. The probable cause section of the search warrant detailed the circumstances of the offense under investigation as follows:
On 4/27/15 P. O. Johnson was contacted by Miami Township Police Department to conduct an investigation involving Sgt. John Swing of said department and sexual misconduct allegations by a police explorer. I met with [A.H.] F 20, * * * who has been with the police explorer program for approximately 3 years. The interview took place on 4/28/15 and she gave the following statement. On 4/16/15 [A.H.] was scheduled for a ride along with a patrol officer. When she arrived Sgt. Swing told [A.H.] she was riding with him and not a patrol officer. [A.H.] stated the explorer policy was for them to ride with patrol and not a ranking officer. Sgt. Swing advised [A.H.] there were no other officers to place her with and she was riding with him. On or about 1300 hours Sgt. Swing look her to his residence * * * in Miami Township, Clermont County and while showing her wrestling moves had sexual contact with [A.H.] by spanking her butt. Once they were back inside the patrol car, while still on his tour of duty, Sgt. Swing reached over and placed his fingers on her vagina in a rubbing motion while asking if she was "nervous." Both incidents were done without the consent or the permission of the victim. During the interview the victim mentioned pictures that were taken of her at various times by Sgt. Swing prior to 4/16/15 using his cell phone. She described his cell phone as a black I phone.
{¶ 94} The only mention of Swing's personal cell phone in this factual recitation was the reference to Swing's use of the cell phone to photograph A.H at times prior to the offense. There was no indication that Swing had used his cell phone in connection with the offense itself or that evidence of the offense itself might be found stored on the cell phone within this section of the affidavit.
{¶ 95} The affidavit continued by providing that
*857 Based upon Affiant's training, experience and participation in previous mobile device investigations, The Affiant knows that:
1. It is common for people involved in the criminal activity to use mobile device(s) to communicate their illicit activities between each other.
2. It is common for people involved in the criminal activity to use mobile device(s) to take pictures and record videos of their illicit activities.
3. It is common for people involved in the criminal activity to connect to the internet and research their illicit activities.
4. It is common for people involved in the criminal activity to have stored in their phone, names and address of others involved in criminal activity to include known and unknown co-conspirators.
{¶ 96} Swing's prior use of his cell phone to photograph A.H. might indicate that Swing harbored some sexual attraction to A.H. Therefore, based on the nature of the offense, any photographs of A.H. contained on the cell phone would be relevant evidence of motive to commit the offense. In this regard, there was probable cause to search the cell phone for photographs of A.H. However, Swing's use of his cell phone to photograph A.H. does not establish probable cause to search files and data on the cell phone unlikely to contain such images or to seize items which obviously are not photographs of A.H.
{¶ 97} The affidavit's probable cause averments, based upon the affiant's training and experience as to how criminals use their cell phones, fail to bridge the gap between files and data which might contain images of A.H. and everything else contained on the cell phone. These averments were not in any way connected to Swing's alleged criminal misconduct. The factual recitation of the offense was that Swing acted alone, as opposed to in concert with others, and contained no hint that he recorded the alleged offense or conducted internet research relating to the offense. These averments were nothing more than generalities as to how a cell phone may be employed by any criminal committing any offense and was pure conjecture as to how Swing may have used his cell phone in connection with this particular offense.
{¶ 98} As the search warrant authorized a search of the entire contents of the cell phone, it fails the particularity requirement of the Fourth Amendment because it is overbroad. "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the framers intended to prohibit." Maryland v. Garrison , 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). "In obligating officers to describe the items to be seized with particularity, the Fourth Amendment prevents 'the issu[ance] of warrants on loose, vague or doubtful bases of fact.' " United States v. Griffith , 867 F.3d 1265, 1275 (D.C. Cir. 2017). "In that way, 'the requirement of particularity is closely tied to the requirement of probable cause.' When a warrant describes the objects of the search in unduly 'general terms,' it 'raises the possibility that there does not exist a showing of probable cause to justify a search for them.' " Id. , quoting 2 LaFave, Search & Seizure § 4.6(a) and (d).
{¶ 99} The Ohio Supreme Court considered a similar search warrant in Castagnola . In that case, the search warrant authorized the search of a computer for "records and documents." Like the search warrant here, the search warrant in *858 Castagnola provided that the "records and documents" for which search and seizure were authorized, if found, would be used as evidence in the prosecution of certain specified crimes. The supreme court found that the search warrant violated the particularity requirement due to overbreadth because "the broad language of this search warrant clearly included items that were not subject to seizure. The search warrant permitted [police] to examine every record or document on Castagnola's computer in order to find any evidence of the alleged crimes." Castagnola , 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638 at ¶ 84. The specification of crimes to which the search for evidence would relate "added nothing to narrow the search." Id. at ¶ 82.
{¶ 100} In United States v. Winn , 79 F.Supp.3d 904 (S.D.Ill.2015), the Federal District Court for the Southern District of Illinois considered a case similar in many respects to this one. Winn was observed at a public swimming pool using his cell phone to photograph or video record 13-and-14-year-old girls in their swimsuits without their permission. While doing so, Winn was rubbing his genitals on the exterior of his swimsuit. Winn was identified and pursuant to an investigation, voluntarily relinquished his cell phone to the investigating police detective. The police detective prepared a complaint for a search warrant to search the contents of Winn's cell phone.[4] The probable cause portion of the complaint detailed Winn's conduct as described above. The detective used a template supplied by the prosecutor to detail the information sought in the search as follows:
any or all files contained on said cell phone and its SIM Card or SD Card to include but not limited to the calendar, phonebook, contacts, SMS messages, MMS messages, emails, pictures, videos, images, ringtones, audio files, all call logs, installed application data, GPS information, WIFI information, internet history and usage, any system files on phone, SIM Card, or SD Card, or any data contained in the cell phone, SIM Card or SD Card to include deleted space.
{¶ 101} A search warrant was issued authorizing a search of Winn's cell phone as sought in the detective's complaint. The search of Winn's cell phone revealed child pornography for which he was charged in federal court. Winn sought to suppress the evidence seized from his cell phone on the ground that the search warrant was overbroad and lacked particularity. The federal district court granted the motion to suppress, finding that
The warrant in this case particularly described the place of the search: the white Samsung Galaxy III cell phone. With regard to the objects of the search, however, the warrant was facially overbroad, exceeded the probable cause to support it, and was not as particular as the circumstances would allow.
Winn , 79 F.Supp.3d at 919.
{¶ 102} In so holding, the federal district found there was no probable cause to search everything on the cell phone. Rather, the court determined that the search should have been restricted to only photos and videos:
In sum, the complaint establishes that the police had probable cause to look for and seize a very small and specific subset of data on Winn's cell phone. But the warrant did not limit the scope of the seizure to only that data or describe that data with as much particularity as the circumstances allowed. Instead, the warrant contained an unabridged template that authorized the police to seize the entirety of the phone and rummage *859 through every conceivable bit of data, regardless of whether it bore any relevance whatsoever to the criminal activity at issue.
Id. at 922.
{¶ 103} The majority distinguishes Winn on the ground that the complaint for the search warrant "did not offer any basis-such as facts learned during the investigation or from the [detective's] training and experience-to believe that such a [broad] search was necessary. On the other hand, in this case, the warrant affidavit explicitly stated how such information, particularly that of stored communications, may become relevant to the crime charged." Apparently, the majority refers to the affiant's averments as to how cell phones may be used in connection with criminal activity. However, as stated above, those averments are general and not in any way related to either Swing's use of his cell phone or an offense such as the one Swing was accused of committing. Furthermore, Winn's reference to the lack of averments based on training and expertise recognized that, even if included, such averments must connect the object of the search to the criminal act under investigation:
The bottom line is that if Detective Lambert wanted to seize every type of data from the cell phone, then it was incumbent upon him to explain in the complaint how and why each type of data was connected to Winn's criminal activity, and he did not do so. Consequently, the warrant was overbroad, because it allowed the police to search for and seize broad swaths of data without probable cause to believe it constituted evidence of public indecency.
(Emphasis added.) Winn , 79 F.Supp.3d at 920.
{¶ 104} The search warrant affidavit suffers from the same deficiency identified in Winn . There was no averment in the affidavit explaining why information on Swing's cell phone beyond images of A.H. was connected to Swing's alleged criminal activity. Without such averments, the search of the entire contents of the cell phone, with law enforcement determining what things were evidence of sexual imposition, violates the particularity requirement. See Castagnola , 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638 at ¶ 82-83 (finding that the particularity requirement is violated by a search of broad categories of information with the determination of what to seize within the discretion of the person searching, based only upon the specification of the crimes under investigation).
{¶ 105} The affiant's averments based upon her training and experience as to how criminals may use their cell phones are generalizations, and standing alone, add nothing toward establishing probable cause to search for a particular thing in a given case. Some further averment connecting what is to be searched with the criminal activity under investigation is necessary.[5] A contrary holding reduces probable cause to an empty concept. Otherwise, every suspect with a cell phone is subject to having law enforcement rummage through his or her phone for evidence of the crime being investigated, merely by including such general averments in the search warrant affidavit. Spilotro , 800 F.2d at 963 ("[The particularity] requirement prevents general, exploratory searches and *860 indiscriminate rummaging through a person's belongings").
{¶ 106} Despite a lack of probable cause to search for anything beyond images of A.H., Swing's internet search history was accessed, revealing that he had searched sections of the Ohio Revised Code relating to the offense of sexual imposition. In a case turning upon whether A.H. was believable, this was extremely prejudicial to Swing. That Swing conducted an internet search regarding the sexual imposition statutes before he was informed of the nature of the allegations against him, indicates his subjective awareness of what had occurred, thus enhancing the believability of A.H.'s claims. This, in my opinion, is reversible error.
{¶ 107} I concur with the majority in the resolution of Swing's second through sixth assignments of error. However, with regard and respect for my colleagues in the majority, I dissent from their resolution of Swing's first assignment of error. I find the first assignment of error well-taken and would reverse the trial court's denial of Swing's motion to suppress and remand for further proceedings.

Apparently search warrants in Illinois are sought by complaint as opposed to affidavit.

This is not to say that general averments may never be considered for establishing probable cause. For instance, observing an individual engaged in a hand-to-hand transaction in area generally known as one where drug trafficking occurs adds context to the observed transaction. The general averments in this case, however, do not provide such context.