[Cite as *State v. Slate*, 2019-Ohio-1505.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | Case No. 18-CA-74 |
| LATERRA SLATE | |
| Defendant-Appellant | O P I N IO N |


CHARACTER OF PROCEEDINGS:     Appeal from the Licking County Court of
                              Common Pleas, Case No. 17-CR-00811


JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       April 19, 2019


APPEARANCES:


For Plaintiff-Appellee              For Defendant-Appellant

CLIFFORD J. MURPHY                  DARRYL O. PARKER
Assistant Prosecuting Attorney      98 Hamilton Park
20 North Second Street – 4th Floor  Columbus, Ohio  43203
Newark, Ohio  43055

*Hoffman, P.J.*

{¶1}   Appellant Laterra Slate appeals the judgment entered by the Licking County Common Pleas Court convicting her of engaging in a pattern of corrupt activity (R.C. 2923.32(A)(1),(B)(1)), aggravated possession of drugs (oxycodone) (R.C. 2925.11(A),(C)(1)(d)) and possession of heroin (R.C. 2925.11(A), (C)(6)(d)) following her a plea of no contest.  Appellant was sentenced to an aggregate term of incarceration of three years.  Appellee is the state of Ohio.

<u>STATEMENT OF THE FACTS AND CASE</u>

{¶2}   On August 4, 2017, Detective Kris Kimble of the Licking County Sheriff's Office obtained a warrant to search Appellant's home located at 21 West Fieldstone Drive, in Etna, Ohio.  The affidavit for the warrant stated Det. Kimble had been contacted by Detective Reuben Hendon of the Gahanna Police Department concerning a subject by the name of Abdul-Mujib Yasin (hereinafter "Mujib"), who was suspected of running a large scale trafficking operation of narcotics in Columbus.  Mujib had been under constant surveillance and a GPS tracking device had been placed on his vehicle on June 20, 2017.  Det. Hendon advised Det. Kimble Mujib had met with Appellant at her residence in Etna, at the McDonald's restaurant and Speedy Gas Station in Pataskala, and at an address in Reynoldsburg.

{¶3}   The affidavit further represented Appellant was believed to be Mujib's source of supply, and he had been seen exchanging packages with her on most days during surveillance.  Surveillance photographs were taken of Appellant going into her house with a plastic bag which appeared to contain a large amount of prescription pill bottles.  She was observed leaving her house and placing a package in the passenger

side of her vehicle before meeting with Mujib, who after meeting with Appellant conducted suspected drug deals around the Columbus area.

{¶4}  Det. Kimble set forth in the affidavit brief narratives from Det. Hendon's surveillance of Appellant in June of 2017.  He noted several meetings between Appellant and Mujib which involved a hand-to-hand transaction between the two.  On June 30, 2017, Det. Hendon saw Appellant leaving her home wearing red nursing scrubs, holding an item in her hand.  He observed her meet Mujib at McDonald's in Pataskala, and a hand-to-hand exchange too place.  Police followed Mujib to a gas station in Columbus, where they saw Mujib conduct what they believed to be drug transactions in the parking lot.  They followed him to at least six other locations where they observed the same activity.

{¶5}  In addition, Det. Kimble obtained a warrant for a GPS tracking device on Appellant's car on July 13, 2017.  GPS tracking demonstrated she and Mujib met almost daily.

{¶6}  The warrant was executed at Appellant's home on August 7, 2017.  Det. Kimble advised Appellant of her Miranda rights, and she agreed to talk to him.  She told him where the pills were located in the house, and also told him $5,000 in cash found in a pillowcase was drug proceeds.  She stated Mujib gets pills from Detroit, which she holds for him.  She admitted a bag in her car contained about 1,000 pills which Mujib gave her the prior day.

{¶7}  Det. Kimble asked Appellant if he could look at her cell phone.  She said yes, and handed him the phone.  She pointed out Mujib's number, and the text messages exchanged between Appellant and Mujib were clearly about drug transactions.

**{¶8}** Appellant was indicted by the Licking County Grand Jury for one count of engaging in a pattern of corrupt activity, one count of aggravated possession of drugs (oxycodone), and one count of possession of heroin. A forfeiture specification of U.S. Currency was attached.

**{¶9}** Appellant filed a motion to suppress on the basis there was no probable cause set forth in the affidavit for the issuance of the search warrant for her home. She filed a second motion to suppress claiming she was not read her Miranda rights prior to making statements to police and giving consent for the search of her cell phone.

**{¶10}** After holding an evidentiary hearing, the trial court overruled her motions to suppress. She withdrew her former pleas of not guilty and entered pleas of no contest to all charges. She was convicted and sentenced to an aggregate term of incarceration of three years.

**{¶11}** It is from the August 6, 2018 judgment of conviction and sentence Appellant prosecutes her appeal, assigning as error:

I. THE TRIAL COURT ERRED IN FINDING PROBABLE CAUSE IN AFFIDAVIT FOR SEARCH WARRANT.

II. THE TRIAL COURT ERRED IN FINDING DEFENDANT'S STATEMENTS VOLUNTARY.

III. THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT GIVING HER CELL PHONE TO DETECTIVE WAS A CONSENSUAL, KNOWING AND VOLUNTARY DECISION.

IV. THE JUDGE WHO ISSUED THE WARRANT FAILED TO ACT

IN A NEUTRAL OR DETACHED FASHION.

{¶12} Appellant's assignments of error all argue the court erred in overruling her motions to suppress.

{¶13} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141(1991); *State v. Guysinger*, 86 Ohio App.3d 592, 621 N.E.2d 726(1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams,* 86 Ohio App.3d 37, 619 N.E.2d 1141 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (1994); *State v. Claytor*, 85 Ohio App.3d 623, 620 N.E.2d 906 (1993); *Guysinger, supra.* As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "... as a general matter

determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

{¶14} It is pursuant to this standard we review Appellant's assignments of error.

I.

{¶15} In her first assignment of error, Appellant argues the search warrant was not supported by probable cause. She argues nothing in the affidavit suggests drugs would be found in her home, and the only reason she was a suspect was her association with Mujib.

{¶16} Even if we were to determine the search warrant was not supported by probable cause, we could find the trial court did not err in denying Appellant's motion to suppress under the "good faith exception" to the exclusionary rule set forth in *United States v. Leon*, 468 U.S. 897 (1984), and adopted by the Ohio Supreme Court in *State v. Wilmoth*, 22 Ohio St.3d 251 (1986). Under the "good faith exception," the exclusionary rule should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause. *State v. George*, 45 Ohio St.3d 325, 330 (1980), *citing Leon*, *supra* at 918-23, 926. However, even under the "good faith exception," suppression of evidence is appropriate where any of the following occurs:

(1) * * * the magistrate or judge * * * was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth * * *; (2) * * * the issuing magistrate wholly abandoned his judicial role * * *; (3) an officer purports to

rely upon * * * a warrant based upon an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) * * * depending on the circumstances of the particular case, a warrant may be so facially deficient-i.e. in failing to particularize the place to be searched or the things to be seized-that the executing officers cannot reasonably presume it to be valid.

**{¶17}** *Leon*, *supra* at 923.

**{¶18}** Nothing in the record suggests Det. Kimble knew information in the affidavit was false or would have known it was false except for his reckless disregard of the truth. Det. Kimble relied on information he obtained from another police officer, Det. Hendon, who had conducted extensive surveillance on Mujib, observing Mujib meeting with Appellant daily. The affidavit set forth Appellant had an apartment in her name in Columbus which ultimately was found to be false. The affidavit stated Det. Hendon believed Appellant was the primary supplier of narcotics to Mujib, which she contradicted by her statements she was holding drugs for Mujib. However, the record does not demonstrate Det. Kimble knew this information was false or recklessly disregarded the truth in swearing out the affidavit.

**{¶19}** The record further does not demonstrate the issuing judge wholly abandoned his judicial role. While Appellant argues in her fourth assignment of error he spent only ten minutes reviewing the affidavit and asked no questions, we find these facts alone are insufficient to demonstrate he abandoned his judicial role. The affidavit was only five pages long, and the facts set forth therein are not complicated. The same judge

issued the warrant to place a GPS tracking device on Appellant's car, and thus had prior familiarity with the investigation.

{¶20} As to the third factor set forth in *Leon, supra*, we find the affidavit was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. The affidavit states Appellant had been seen making hand-to-hand exchanges with Mujib on an almost daily basis, after which he was observed conducting what police believed to be drug transactions. She was observed leaving her home to meet Mujib carrying a bag of what appeared to be prescription pill bottles.[1] The information in the affidavit was based on surveillance of both Mujib and Appellant over a period of time, as well as information gleaned from GPS tracking devices placed on both of their vehicles. From the information contained in the affidavit, the warrant was not so lacking in probable cause as to render the police officers' belief in its existence entirely unreasonable.

{¶21} Finally, the warrant sets forth with particularity the home to be search by both address and description, as well as Appellant's vehicle by make, model, registration number, and VIN number. The warrant further sets forth in detail the items to be seized.

---

[1] While Appellant argues from Det. Kimble's testimony he could not clearly see what was in the bags and drew assumptions from the shape of the bags, this information does not come from the four corners of the affidavit. *See State v. Castagnola,* 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638 (when no oral testimony is presented to the neutral and detached magistrate in conjunction with an affidavit for a search warrant, the probable-cause determination is based on the four corners of the document). We further note the affidavit does not definitively state the bags contained pill bottles, but rather avers the bags "look to contain" pill bottles or a bag "appears to contain" pill bottles, and thus the affidavit is not inconsistent with Det. Kimble's testimony at the suppression hearing.

**{¶22}** We find the court did not err in overruling Appellant's motion to suppress on the basis the warrant was invalid, as the police acted in good faith reliance on the warrant in conducting the search.

**{¶23}** The first assignment of error is overruled.

II.

**{¶24}** In her second assignment of error, Appellant argues the court erred in finding her statements voluntary, as she was in custody and was not read her Miranda rights by Det. Kimble.

**{¶25}** Det. Kimble testified although he did not have her sign a written waiver, he did read Appellant her Miranda rights, she indicated she understood, and agreed to talk with him. Supp. Tr. 28-29. Appellant testified he did not read her Miranda rights. Appellant argues we should believe her testimony over Det. Kimble's testimony.

**{¶26}** The trial court specifically found:

With regard to the Miranda issue, the Court finds that the State has established that the Defendant was read her Miranda warnings. Specifically, the Court found that Detective Kimble's testimony on this point was credible.

**{¶27}** Decision and Order Denying Defendant's Motions to Suppress, May 17, 2018.

**{¶28}** When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility

of witnesses. *See State v. Dunlap,* 73 Ohio St.3d 308, 314, 1995–Ohio–243, 652 N.E.2d 988; *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). As the trial court is in a better position than this court to evaluate the credibility of Appellant and Det. Kimble, we find no error in the court's finding Appellant's statements were voluntary, as she was read her Miranda rights prior to agreeing to speak to police.

**{¶29}** The second assignment of error is overruled.

III.

**{¶30}** In her third assignment of error, Appellant argues the court erred in finding she voluntarily allowed Det. Kimble to search her cell phone.

**{¶31}** Det. Kimble testified he asked if he could look at the cell phone. He testified Appellant responded in the affirmative and handed him the phone. He testified she never withdrew or restricted her consent to search the phone. Tr. 37. Appellant admitted she handed him the cell phone, but testified she thought she had no choice but to give him her phone. Tr. 124.

**{¶32}** The trial court found:

> The Defendant, herself, testified at the suppression hearing that the detective asked if he could take her phone and that she replied "yes." Based on all the facts and circumstances gathered from the suppression hearing, the Court finds that this was a consensual, voluntary, knowing decision on the Defendant's part and as a result, there was no Fourth Amendment violation.

**{¶33}** Decision and Order Denying Defendant's Motions to Suppress, May 17, 2018.

**{¶34}** We find the trial court, having previously found Appellant was read her Miranda rights before talking to police, did not err in finding her consent to search the phone was voluntary. While she testified she would not have allowed him to take the phone if she knew she had a choice in the matter, she admitted she handed him the phone.

**{¶35}** The third assignment of error is overruled.

IV.

**{¶36}** In her final assignment of error, Appellant argues Judge Wright, the domestic relations judge who issued the warrant, did not act as a neutral and detached magistrate because he spent only ten minutes reviewing the affidavit and did not ask any questions of Det. Kimble.

**{¶37}** We decline to draw the conclusion Judge Wright was not acting as a detached and neutral magistrate from the fact he spent approximately ten minutes reviewing the affidavit and asked no questions. The affidavit is only five pages long. Further, Judge Wright also issued the search warrant for the GPS tracker on Appellant's car, and therefore was familiar with the case. Supp. Tr. 35; State's Exhibit 1. Appellant has not demonstrated Judge Wright failed to act as a neutral and detached magistrate in reviewing the affidavit and issuing the search warrant for Appellant's home.

**{¶38}**  The fourth assignment of error is overruled.

**{¶39}**  The judgment of the Licking County Common Pleas Court is affirmed.

By: Hoffman, P.J.

Wise, John, J.  and

Baldwin, J. concur