**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 1904007242 |
| ELGIN WILSON, | ) | |
| | ) | |
| Defendant. | ) | |

**Submitted: December 3, 2020**
**Decided: January 29, 2021**

**Upon Defendant Elgin Wilson's Motions to Suppress: DENIED**

The defendant, Elgin Wilson, is charged with first degree murder in connection with a shooting that occurred in downtown Wilmington. During the course of their investigation into the murder, police obtained surveillance footage that suggested the defendant was present near the scene at the time of the shooting and fled the area immediately afterward. Police also spoke to witnesses and were shown text messages that indicated the defendant was texting and calling witnesses immediately before and after the shooting. Police therefore sought and obtained warrants to search the defendant's phone for data and digital information within six enumerated categories, including text messages, call logs, and location information. The warrants temporally limited the search to the day before, the day of, and the day after the murder.

The defendant argues the Court must suppress the evidence obtained from those warrants because the warrants were unconstitutionally vague and overbroad.

The pending motions to suppress require the Court to determine whether warrants that authorize police to search a specified phone for "data and digital information" within six enumerated categories over a three-day time period lack the requisite particularity to satisfy the United States and Delaware constitutions. The motions to suppress are denied because I conclude (i) the challenged warrants were particular as to the time period of the search and the items to be searched and seized, and (ii) the scope of the authorized searches did not exceed the probable cause on which they were based.

**FACTUAL & PROCEDURAL BACKGROUND**

1. On October 25, 2018, police responded to reports of shots fired in the 999 block of Spruce Street. There, they found the victim lying in the street with multiple gunshot wounds. Medical personnel pronounced the victim dead at the scene. On October 30, 2018, Defendant Elgin Wilson was arrested on an unrelated drug charge. When Defendant was taken into custody, he possessed one gold and one silver iPhone; the police seized both phones.

2. On November 12, 2018, Detective Devon Jones applied for a search warrant on the gold phone (the "November 12th Warrant"). A Magistrate of the Justice of the Peace Court approved the application that same day. The November 12th Warrant sought five categories of data: call logs, text messages, MMS, any applications ("apps") used to send and receive text messages, and subscriber

2

information. Detective Jones simultaneously obtained a nearly identical warrant on the silver phone. On November 24, 2018, Detective Jones applied for a second search warrant on the gold phone (the "November 24th Warrant"). The November 24th Warrant sought the same five categories of data as the November 12th Warrant but added a sixth category: GPS information and other location information. Specifically, the State sought to use the iPhone's "location services" function to determine if Defendant (or at least his phone) was in the area of the shooting on October 25, 2018.[1] Once again, a Magistrate approved the application on the same day. Both Warrants limited the authorized search to the three-day period between October 24, 2018 and October 26, 2018.

3.     Before obtaining the November 12th Warrant, the police developed Defendant as a suspect through video surveillance footage and witness statements. Video surveillance from local businesses showed that, minutes before the shooting, a light-colored Buick Lucerne parked close to the block where the victim was murdered.[2] Surveillance footage from a gas station approximately two hours earlier showed Defendant exiting the driver's side of a silver Buick Lucerne, and the police later found a vehicle at Defendant's address matching that description.[3]

---

[1] D.I. 28, Ex. A. (herein after cited as "Nov. 24th Aff."), at ¶ 20.
[2] D.I. 27, Ex. A. (hereinafter cited as "Nov. 12th Aff."), at ¶ 6.
[3] *Id*. at ¶ 13.

4. The police also gathered statements from three witnesses. One witness ("Witness 1") reported hearing Defendant saying he was going to get revenge for his brother's murder.[4] The victim in this case was the mother of the man who pleaded guilty to killing Defendant's brother.[5] The witness also viewed surveillance footage that showed a person believed to be the gunman walking south on Spruce Street shortly before the shooting and later running away in the opposite direction.[6] Witness 1 identified the suspect as Defendant.[7] A second witness ("Witness 2") reported seeing a person with a mask over his face walking in the area shortly before the shooting.[8] That witness then heard several gunshots and saw the same person flee towards where the Buick Lucerne was parked.[9] Witness 2 insisted Defendant was not in the area at the time of the shooting and consented to a search of their cell phone.[10] In Witness 2's cell phone, the police found text messages and voicemails from Defendant stating he left the area earlier that evening.[11] Defendant also called the witness immediately following the shooting, asking what happened and declaring that he was at home at the time.[12] A third witness ("Witness 3") was

---

[4] *Id.* at ¶ 7.
[5] *Id.* at ¶¶ 7, 10.
[6] *Id.* at ¶ 6.
[7] *Id.* at ¶ 8.
[8] *Id.* at ¶ 9.
[9] *Id.*
[10] *Id.* at ¶¶ 10, 11.
[11] *Id.* at ¶ 11
[12] *Id.* at ¶ 12.

4

present during this phone call and heard Defendant say he was home at the time of the shooting.[13]

5.      On April 15, 2019, a grand jury indicted Defendant on charges of Murder First Degree, Possession of a Firearm during the Commission of a Felony, and Possession of a Firearm by a Person Prohibited. On June 2, 2020, Defendant filed two Motions to Suppress challenging the constitutionality of the November 12th and November 24th Warrants for the gold iPhone.[14] The State filed an omnibus opposition, and the Court held oral argument. During argument, the parties requested an opportunity to submit supplemental briefing. On November 6, 2020, Defendant filed a supplemental letter regarding the location information sought by the November 24th Warrant, and on December 3, 2020, the State filed its supplemental response on that issue.

**PARTIES' CONTENTIONS**

6.      Defendant argues the Warrants[15] did not establish a sufficient nexus between the murder and the phone because the State's allegations are based on

---

[13] *Id.*

[14] Defendant also filed a third motion to suppress evidence retrieved from the silver phone. The State, however, did not find anything responsive on the silver phone, and that motion therefore is moot. *See* D.I. 29, 36.

[15] Defendant's two Motions contain language and arguments that virtually are identical. Unless otherwise specified, the November 12th Warrant and the November 24th Warrant will be referred to collectively as "the Warrants."

generalized suspicion and speculation.[16]  Specifically, Defendant takes issue with the Warrants' assertion that "it is common for individuals to use their cellular devices to take pictures/videos of themselves with friends and associates."  Defendant contends this statement is too general to establish a nexus between his phone and the murder investigation.[17]  Defendant also asserts the Warrants were unconstitutionally broad because they sought "data and digital information," without stating the specific types of data and digital information the State believed were pertinent to the investigation.  According to Defendant, this broad language covered "in essence everything on the phone" during the relevant time period and authorized an unconstitutional top-to-bottom search of the phone.[18]  With respect to the November 24th Warrant, Defendant further argues the term "location information" lacked particularity as to how the information was created within the phone.[19]  Defendant asserts the location services function of an iPhone accesses numerous applications ("apps"), thereby effectively permitting the State to gather digital information from an unlimited number of apps.[20]  Accordingly, Defendant contends the November

---

[16] Def. Mot. 1, D.I. 27, at 8-9 (Nov. 12th Warrant); *see also* Def. Mot. 2, D.I. 28, at 8-9 (Nov. 24th Warrant).
[17] Def. Mot. 1, at 9; *see also* Def. Mot. 2 at 9.
[18] Def.'s Mot. 1, at 9-10; *see also* Def.'s Mot. 2, at 9-10.
[19] Def.'s Supp. Letter, D.I. 43, at 2.
[20] *Id*.

24th Warrant was overly broad and failed to specify with particularity what evidence the State was seeking within the phone.[21]

7.    The State maintains the averments in the affidavit of probable cause supporting the November 12th Warrant sufficiently establish a nexus between the murder and Defendant's phone because the November 12th Warrant outlines specific facts linking Defendant and his phone to the victim's murder.[22]  The State points to several witness statements that it contends support the inference that Defendant used his phone to communicate his whereabouts and form an alibi on the night of the murder.[23]  The State asserts the November 12th Warrant also sufficiently was particular because it sought five specified categories of data.[24]  The State contends that, contrary to Defendant's allegations, the November 12th Warrant did not contain language that would authorize an impermissible top-to-bottom search of Defendant's phone.[25]

8.    The State argues the November 24th Warrant nearly was identical to the November 12th Warrant, except that the November 24th Warrant added "location information" as a category of data to be searched.[26]  The State reasons the November 24th Warrant adequately established a nexus between Defendant, the crime, and the

---

[21] *Id*. at 3.
[22] State's Resp., D.I. 36, at 8, 10.
[23] *Id.* at 10-13.
[24] *Id.* at 16.
[25] *Id.* at 15.
[26] *Id*. at 19.

7

evidence sought by (i) detailing witness statements and surveillance video that pieced together Defendant's suspected travel path around the time of the murder, and (ii) explaining how Defendant's location could be ascertained by reviewing the location services function on his phone.[27] As to particularity, the State maintains that the November 24th Warrant contained substantially the same language as the November 12th Warrant and similarly lacked language authorizing a top-to-bottom search of the phone.[28] The State asserts that the November 24th Warrant specifically sought access to the iPhone's "location services" function. The State contends that function can be accessed without reviewing other apps, contrary to Defendant's assertion that the search allowed the State access an unlimited number of apps.[29]

**DISCUSSION**

9.     The United States Constitution's Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]"[30] A defendant who challenges the validity of a search warrant bears the burden of establishing by a preponderance of the evidence

---

[27] *Id.* at 19-21.

[28] *Id.* at 22.

[29] State's Supp. Letter, D.I. 48, at 2.

[30] U.S. Cost. Amend. IV. Similarly, Article I, § 6 of the Delaware Constitution provides: "The people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and no warrant to search any place, or to seize any person or thing, shall issue without describing them as particularly as may be; nor then, unless there be probable cause supported by oath or affirmation."

that the search violated his Constitutional rights.[31]  A search warrant only may be issued upon a showing of probable cause, which is determined based on a totality of the circumstances.[32]  A warrant is valid if its supporting affidavit contains facts adequate for a judicial officer to form a reasonable belief that the items to be seized will be found in a particular place.  In other words, there must be a "logical nexus between the items being sought and the place to be searched."[33]  Additionally, the warrant must describe with sufficient particularity the things to be searched and the persons or items to be seized.[34]  The warrant must be no broader than the probable cause on which it is based.[35]

### A. The Warrants were supported by probable cause.[36]

10.  In assessing probable cause, a reviewing court considers only the information contained in the application's four corners and gives great deference to the magistrate's initial finding that there was probable cause to issue the warrant.[37]

---

[31] *State v. Jones*, 2016 WL 10998979, at *3 (Del. Super. June 2, 2016) (citing *State v. Holton*, 2011 WL 4638781, at *2 (Del. Super. Sept. 22, 2011)).

[32] *Fink v. State*, 817 A.2d 781, 786-87 (Del. 2003); U.S. Const. Amend. IV; Del. Const. art. 1, § 6.

[33] *State v. Reese*, 2019 WL 1277390, at *2 (Del. Super. March 18, 2019) (quoting *State v. Westcott*, 2017 WL 283390, at *2 (Del. Super. Jan. 23, 2017)).

[34] *U.S. v. Grubbs*, 547 U.S. 90, 97 (2006).

[35] *Wheeler v. State*, 135 A.3d 282, 299 (Del. 2016) (citing *United States v. Zimmerman*, 277 F.3d 426, 432 (3d Cir.2002)).

[36] Defendant challenged probable cause in his Motions but effectively conceded the issue at oral argument.  Because it is relevant to the particularity analysis, however, the Court nonetheless will address the issue of probable cause.  Defendant confirmed the mootness of the third motion (relating to the silver iPhone) at oral argument.

[37] *Illinois v. Gates,* 462 U.S. 213, 236 (1983).

Generalized suspicions, however, do not form a substantial basis for finding probable cause.[38] The Supreme Court has found unpersuasive general statements to the effect that "criminals often communicate through cell phones."[39]

11.    Here, the affidavits of probable cause supporting the Warrants established a nexus between Defendant, the alleged crime, and Defendant's cell phone. The affidavits contain statements by several witnesses linking Defendant and his phone to the shooting and indicating Defendant was using his phone around the time of the shooting.

12.    First, the affidavit contained specific facts supporting the Magistrate's determination that there was probable cause to believe Defendant committed the crime. Witness 1 told the police that Defendant was in the area near the crime and Defendant stated he was "going to get revenge for his brother's murder."[40] During the homicide investigation, the police also obtained video surveillance that allowed them to piece together the suspect's path to and from the scene of the shooting. The video surveillance showed a light-colored Buick Lucerne driving northbound and ultimately parking on 10th and Church Streets.[41] Defendant was linked to a vehicle of the same make and color and was seen driving that vehicle on the day of the

---

[38] *State v. Johnson*, 2019 WL 6903997, at *7 (Del. Super. Dec. 18, 2019).
[39] *Id.*
[40] Nov. 12th Aff. at ¶ 7.
[41] *Id.* at ¶ 6.

10

shooting.[42]  Witness 2 reported seeing the suspected gunman wearing a mask and walking from Church Street onto 10th Street and then down an alleyway.[43]  Moments later, Witness 2 reported hearing gunshots coming from the alleyway and seeing the suspect fleeing back down 10th Street toward Church Street.[44]  When the police showed the surveillance footage to Witness 1, the witness said with absolute certainty that the suspect in the video was Defendant.[45]

13.    Second, the affidavits supported the Magistrate's determination that there was a nexus between the murder and Defendant's iPhone.  The affidavits averred that Witness 2 texted Defendant throughout the day of the murder.[46]  With consent, Detective Jones searched Witness 2's cell phone and reviewed the text messages from the day of the crime.  The messages included Defendant texting Witness 2 at approximately 3 am and placing several calls to Witness 2 within ten minutes after the murder.[47]  Witness 3 was with Witness 2 near the crime scene when Defendant called and asked what happened.[48]  According to Witness 3, Defendant told Witness 2 he was home at the time of the shooting.[49]  The State alleges this statement was Defendant's attempt to create an alibi.  Witness 3 also identified

---

[42] *Id.* at ¶ 13.
[43] *Id.* at ¶ 9.
[44] *Id.*
[45] *Id.* at ¶ 8.
[46] *Id.* at ¶ 11.
[47] *Id.*
[48] *Id.* at ¶ 12.
[49] *Id.*

Defendant when shown a six-photograph lineup by the police.[50]  Based on these witness statements and the evidence on Witness 2's phone, the reviewing Magistrate reasonably could infer that the evidence the police sought could be found on Defendant's phone.

14.     With regards to the location information sought in the November 24th Warrant, the police averred that the cell phone's location services function may have collected data from Defendant's communications and could pin down Defendant's movements around the time of the shooting.[51]  The affidavit supporting the November 24th Warrant set out locations where Defendant may have been that evening, the existence of video surveillance, and communications made from his phone during the time of the shooting, including Defendant's statements shortly after the shooting regarding where he had been when the crime occurred.  These allegations did more than "a minimal amount of work" and went beyond the vague, general statements previously ruled insufficient.[52]  A magistrate presented with the affidavit reasonably could have found a basis to believe that data reflecting Defendant's location during the shooting would be on the phone.  Accordingly, the Warrants were supported by probable cause.

---

[50] *Id.*
[51] Nov. 24th Aff. at ¶ 21.
[52] *Buckham v. State*, 185 A.3d 1, 17 (Del. 2018).

12

**B. The Warrants were sufficiently particular and were not constitutionally overbroad.**

15.     Even when a warrant is supported by probable cause, it also must be sufficiently particular and narrow in scope to satisfy the Fourth Amendment.[53] These additional requirements ensure that searches are as limited as possible and help guard against the authorities engaging in an "exploratory rummaging in a person's belongings."[54]  To meet this standard, a warrant must describe the items to be searched with sufficient particularity and must be no broader than the probable cause on which the warrant is based.[55]  "Warrants directed to digital information present unique challenges in satisfying the particularity requirement, given the unprecedented volume of private information stored on devices containing such data."[56]  Accordingly, a warrant must describe with as much specificity as possible what the investigating officers believe will be found during the digital search.[57]

**i.  The November 12th Warrant**

16.     Defendant argues the November 12th Warrant was insufficiently particular and unconstitutionally overbroad, contending it was similar to the warrant rejected by the Delaware Supreme Court in *Buckham v. State*.[58]  But the November

---

[53] *Wheeler v. State*, 135 A.3d 282, 298-99 (Del. 2016).
[54] *Id.* at 298.
[55] *Id.* at 299.
[56] *Id*.
[57] *Id*. at 304.
[58] 185 A.3d 1 (Del. 2018).

12th Warrant and the *Buckham* warrant differ in key respects. In *Buckham*, the State sought a variety of data from the cell phone that was found in Buckham's possession when he was arrested several weeks after the crime.[59] The warrant did not limit the search to any relevant time frame and used the broad term "including but not limited to" when describing the categories of data sought.[60] The Delaware Supreme Court ruled that the broad language and lack of temporal limitation made the warrant improperly vague and broader than the probable cause on which it arguably was based.[61] Importantly, in *Buckham*, the only possible nexus between the phone and the crime was the possibility the phone would reveal GPS location data regarding Buckham's whereabouts during and after the crime.[62] Even that inference, however, was a stretch because the affidavit did not contain any specific facts indicating Buckham had his phone in his possession at the time of the crime.[63] Given the nexus issue, the broad search authorized in *Buckham* could not satisfy the constitutional requirements for particularity and breadth.

17. Similarly, in *Wheeler v. State*,[64] another case on which Defendant relies, the police obtained warrants to search Wheeler's entire digital portfolio found

---

[59] *Id*. at 15.
[60] *Id*.
[61] *Id*. at 19.
[62] *Id.* at 4, 19.
[63] *Id.* at 17.
[64] 135 A.3d 282 (Del. 2016).

on personal computers, cell phones, digital cameras, and video cameras.[65] The search also was not limited to any relevant time frame and permitted searches for data far beyond the written communications police were seeking to support their investigation into witness tampering.[66] The Delaware Supreme Court ruled the warrants permitted broad, exploratory searches and therefore failed the particularity requirement.[67]

18.     Unlike the *Buckham* and *Wheeler* warrants, the November 12th Warrant did not seek any and all data or digital information; instead, it sought only five enumerated categories of digital information. The November 12th Warrant did not contain language that would suggest an impermissibly broad scope such as "any and all" or "including but not limited to." The categories limited the search to call logs, subscriber information, and various forms of messaging. The November 12th Warrant described what the officers believed would be found on the phone with specificity[68] and thereby satisfied an important metric in judging particularity.[69] Further, the November 12th Warrant was limited to a three-day period around the

---

[65] *Id*. at 289.

[66] *Id*. at 304-05, 307.

[67] *Id*. at 307.

[68] *See* Nov. 12th Aff. at ¶¶ 17-18 (seeking call history, text messages, social media messages, photographs, and videos).

[69] *See Wheeler*, 135 A.3d at 304 ("The guiding metric applied by the court [is] that 'officers must describe what they believe will be found . . . with as much specificity as possible under the circumstances[,]' and that '[t]his will enable the searcher to narrow his or her search to only the items to be seized.'") (quoting *State v. Castagnola*, 46 N.E.3d 638, 659 (Ohio 2015)).

shooting, unlike the warrants in *Wheeler* and *Buckham* that lacked any temporal limitations. The affidavit supporting the November 12th Warrant contained probable cause to believe this particular evidence would be found in the phone. Accordingly, the November 12th Warrant described the items to be searched with sufficient particularity, and the scope of the search did not exceed the probable cause on which it was based.

### ii. The November 24th Warrant

19. The November 24th Warrant differed from the November 12th Warrant in only a few respects. First, in addition to the five categories of information previously authorized, the Warrant sought location data as a sixth category. Second, the Warrant added two paragraphs providing background on the November 12th Warrant and some of the evidence obtained through that search.[70] Third, the November 24th Warrant added two paragraphs defining the term "location information" and identifying precisely what evidence police were seeking. Specifically, the affidavit stated:

> Your affiant can truly state that Apple I-Phones have "location services" on the cell phone that is used to track the users [sic] movements and determine your approximate location. Location services allow apps and websites (including Maps, Camera, Weather, and other apps) to use information from cellular, WiFi, Global Positioning System (GPS) networks . . . . "Location services" on the cell phone will show areas that are frequent destinations of the user . . . . By viewing the "location services," this investigator will be able to

---

[70] *See* Nov. 24th Aff. at ¶¶ 18-19.

16

see if [Defendant] and the cell phone were in the area of the murder on October 25, 2018.[71]

20.    As to the first five categories in the warrant, the Court already has concluded the particularity standard was met.  The November 24th Warrant neither deleted nor altered any of the categories of information previously sought by the November 12th Warrant.  Defendant, however, argues the November 24th Warrant only sought location data and therefore the inclusion of the other five categories impermissibly broadened the scope of the warrant beyond that for which there was probable cause to search.  This argument falters because, as explained above, the Warrant was supported by sufficient probable cause to search for the five previous categories.  The inclusion of previously authorized categories did not somehow taint the request for location information.[72]

21.    Defendant further asserts the location information request lacked particularity because there are an unlimited number of applications ("apps") on a cell phone from which location data can be gathered.  Defendant argues the term

---

[71] *Id*. at ¶ 20.

[72] Even if, hypothetically, the November 24th Warrant was unconstitutional, evidence obtained under the first five categories would survive under the independent source doctrine.  Under this doctrine, evidence obtained without authorization does not become inaccessible if the evidence also was gained from an independent source. *Johnson*, 2019 WL 6903997, at *8.  Accordingly, facts obtained through an invalid warrant need not be suppressed if they also are obtained through a lawful warrant that did not rely on anything obtained in the tainted warrant. *Id.*  As discussed above, the November 12th Warrant was supported by probable cause, was sufficiently particular, and was not overbroad.  Accordingly, any facts obtained through the November 12th Warrant (*i.e.*, the five categories of information) need not be suppressed even if the November 24th Warrant was unconstitutional.

"location information" is so broad that it would allow the sort of top-to-bottom search that courts prohibit.[73] Defendant is incorrect, however, because the November 24th Warrant limited the meaning of "location information" solely to data that would use the phone's location services function to identify the location of the cell phone at the time a given communication was made.[74] Additionally, the request for location information had the same limitation in scope as the other five categories. The authorization to search for location information was limited to the same three-day period, and the term is not nearly as inclusive as phrases such as "any and all" or "including but not limited to," which typically run afoul of constitutional requirements regarding particularity and breadth. The fact that location services data is compiled when a user accesses various apps does not render the warrant overbroad or insufficiently particular. The warrant described with as much specificity as possible what the police believed would be found on the phone.[75] Accordingly, the November 24th Warrant was constitutional.

**CONCLUSION**

For the foregoing reasons, Defendant Elgin Wilson's Motions to Suppress are **DENIED. IT IS SO ORDERED**.

---

[73] *See, e.g.*, *Buckham*, 185 A.3d at 18.
[74] Nov. 24th Warrant at ¶ 20
[75] *See Wheeler*, 135 A.3d at 304 ("A key principle distilled from the jurisprudence in this area is that warrants, in order to satisfy the particularity requirement, must describe what investigating officers believe will be found on electronic devices with as much specificity as possible under the circumstances.").

Original to Prothonotary
cc:    Cynthia Hurlock, Deputy Attorney General
       Martin O'Connor, Deputy Attorney General
       Brian J. Chapman, Esquire