[Cite as *State v. McGee*, 2023-Ohio-2935.]

IN THE COURT OF APPEALS OF OHIO

TENExTH APPELLATE DISTRICT

State of Ohio,                              :

    Plaintiff-Appellee,          :

                                 No. 21AP-543

v.                                        :           (C.P.C. No. 19CR-1649)

William D. McGee,                          :          (REGULAR CALENDAR)

    Defendant-Appellant.         :

D E C I S I O N

Rendered on August 22, 2023

**On brief:** *G. Gary Tyack,* Prosecuting Attorney, and *Taylor M. Mick,* for appellee. **Argued:** *Taylor M. Mick.*

**On brief:** *Todd W. Barstow*, for appellant. **Argued:** *Todd W. Barstow.*

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, P.J.

{¶ 1} Defendant-appellant, William D. McGee, appeals the judgment of the Franklin County Court of Common Pleas following a jury trial and finding of guilt as to the offenses of felonious assault with a three-year firearm specification, improper discharge into a habitation with a three-year firearm specification, and discharge into a habitation with a three-year firearm specification, and a bench trial and finding of guilt as to having a weapon under disability. McGee's firearm specifications were run consecutively, and the remaining sentences were run concurrently to each other but consecutive to the firearm specifications, for a total sentence of 17 years incarceration. McGee asserts four assignments of error with the trial court's judgment.

{¶ 2} The March 20, 2018 incident that forms the basis of the charges against McGee arose from his dispute with Vincent McGowan. McGowan and McGee had been

friends for approximately 20 years.  McGee apparently believed that McGowan had stolen an item from him and sent him text messages to that effect. McGowan agreed to stop by the Stoneridge Drive apartment of McGee's girlfriend Angelica Smith to discuss the issue. McGee did not live in Columbus, but occasionally stayed at Smith's apartment and was allegedly there at the time of the incident.

{¶ 3}  McGowan drove to Smith's apartment at around 3:00 p.m. on the date in question, and honked his horn twice to let McGee know he had arrived.  McGowan testified that at that point, McGee and another man—who McGowan subsequently described but could not identify other than by the nickname "Q"—walked out the front door of the apartment and began shooting handguns at McGee's truck. McGowan was able to identify McGee as one of the shooters "clear as day," and while he had seen the other shooter previously, he did not know his name. (July 13, 2021 Tr. Vol. 2 at 380.)  McGowan put his vehicle in reverse and sped away from the area.  He drove about to a nearby business plaza and called 9-1-1, and during that call he described the incident, repeatedly identifying McGee by name.  Columbus Police Department officers who responded to the business plaza noted that McGowan was bleeding from a wound on the side of his neck and that there were numerous bullet holes in McGowan's truck; they also located a bullet on the floor of the truck.  McGowan again described the shooters and again identified McGee by name. The officers transported McGowan to Smith's apartment complex in the back of a police van, and McGowan identified the apartment where the shooters fired from as apartment E, Smith's apartment.

{¶ 4}  Columbus Police Officer Hicks and Columbus Police Detective Miller testified at trial, and each described the scene of the shooting incident.  Police had been dispatched at 3:08 p.m., and Officer Hicks arrived shortly thereafter, following the 9-1-1 call and approximately one minute after the first officers arrived on the scene.  Officer Hicks' body camera was active when he arrived on the scene.  Several officers were wearing tactical gear and had weapons drawn, as there had been conflicting reports from on-scene witnesses whether there was still an active shooter on the scene.  Responding officers identified two nearby apartments that were struck by gunfire, and subsequently obtained a key to Smith's apartment from the complex's maintenance department.  They then entered the apartment and conducted a warrantless protective sweep, which was captured on Officer Hicks' body

camera video. No one was located in the apartment, but as Officer Hicks was exiting the apartment, he saw a pile of shell casings inside the apartment near the front door as well as a pile of shell casings outside the front door of the apartment directly below Smith's apartment. Detective Miller subsequently collected both piles of casings and testified at trial that the placement of the piles were consistent with two shooters standing near the front door of Smith's apartment and firing toward the parking lot and other two apartments that were struck by gunfire.

{¶ 5} The following day, McGowan and McGee exchanged Facebook messages about the incident. Using a Facebook account with the name "William Cruse," McGee sent McGowan a message stating that "I will buy u a new truck just clear my namw" [sic]. (Tr. Vol. 2 at 394; State's Ex. H.) McGowan showed these messages to a police detective, and when he was questioned about them, McGee admitted that he had sent the messages. The state subsequently obtained a search warrant for the Facebook account associated with the username "William Cruse" and gained copies of the messages, in addition to the copies of the messages obtained from McGowan. McGee filed motions to suppress the fruits of the warrantless search of the apartment as well as the Facebook evidence.

{¶ 6} At trial, McGee presented an alibi defense, and testified against the advice of his trial counsel. Angelica Smith also testified in support of the defense. McGee's initial notice of alibi stated that he intended to present evidence that he was with Smith at the home of a friend in Columbus from 9:30 a.m. through after midnight. But seven months later and following a change of counsel, McGee filed a second notice of alibi indicating that he was with Smith at the time of the offense without specifying their location. Two weeks before trial, McGee filed a notice indicating that he intended to call Smith and "Ravine Levine" as alibi witnesses.

{¶ 7} Just two days before trial, McGee's counsel provided the state with invoices from a company in Lima, Ohio and indicated he intended to use them as part of his alibi defense. He also intended to use a recorded statement from Smith which indicated that she and McGee were in Lima at the time of the offense. The state filed a motion in limine to exclude the invoices from the Lima business, and while the trial court noted it was not clear that the invoices could even show that McGee was in Lima on the date and time of the incident, it ultimately excluded the invoices based on Crim.R. 12.1, the hearsay rule, the lack

of authentication, and Evid.R. 403.  Defense counsel argued that he could call a witness from the business to authenticate the invoices on the following day, but the trial court held that the witness would not resolve the issue of the late notice under Crim.R. 12.1.

{¶ 8}  At trial, Angelica Smith testified that McGee had arrived at her apartment between 9:00 and 11:00 a.m. on March 20, 2018, that she and McGee left the apartment around noon to go visit a friend's home in the OSU campus area where they stayed for less than an hour, that they next visited the home of Ravine Levine on the east side shortly after 2:00 p.m., and that they then left and drove to the business in Lima around 3:00 p.m. She testified that they were in Lima until around quarter after 5:00, at which point they drove back to Columbus and went to a fast-food restaurant.  She stated that they did not arrive back at the apartment until approximately 11:00 p.m., when McGee dropped Smith off at the apartment.  Upon being dropped off, Smith found an eviction notice taped to her door. (Tr. Vol. 3 at 617-28.)

{¶ 9}  McGee testified similarly, although his particulars differed, he indicated that the couple arrived back in Columbus and went to the apartment of one of Smith's friends around 7:15 p.m.  He also stated that at some point during the day McGowan called him to ask who the men were who were shooting at him.

{¶ 10} The state presented a rebuttal case to establish that it had been unable to interview Smith or serve her with a subpoena prior to trial, and also that McGee's trial testimony was inconsistent with a voluntary statement he had given to the police over a year earlier—he had not previously mentioned going to Lima or anywhere outside of Columbus, even though based on the timeline in his trial testimony he would have been en route to Lima when the shooting occurred.

{¶ 11} The jury subsequently found McGee guilty of felonious assault, improper discharge into a habitation, discharge into a habitation, and the attached specifications, and the trial court found him guilty of having a weapon under disability.  He was sentenced on September 22, 2021, and this timely appeal followed.  McGee asserts four assignments of error with the trial court's judgment.

> I. THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING

HIM GUILTY OF FELONIOUS ASSAULT AND DISCHARGING A FIREARM AT OR NEAR A HABITATION, AS THOSE VERDICTS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II. APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE, THEREBY DENYING HIM HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS.

III. THE TRIAL COURT ABUSED ITS DISCRETION IN PERMITTING THE STATE TO USE APPELLANT'S PRIOR CONVICTION TO IMPEACH HIM.

IV. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE.

We address each issue in turn, beginning with McGee's sufficiency and manifest weight arguments.

{¶ 12} Pursuant to *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, to determine whether a conviction is supported by sufficient evidence of guilt, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, following *Jackson v. Virginia*, 443 U.S. 307 (1979).

{¶ 13} But determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The jury, or the court in a bench trial, may take note of inconsistencies at trial and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964). And therefore, "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), *superseded by constitutional amendment on other grounds* and quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the

evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 14} Under these established standards, McGee's sufficiency and manifest weight arguments cannot prevail. McGowan's testimony alone provides sufficient evidence upon which a reasonable factfinder could conclude that all elements of the offenses of felonious assault, improper discharge into a habitation, discharge into a habitation, and having weapons under disability, along with the attached firearm specifications were established. And moving to his manifest weight challenge, it is worth observing that McGee does not argue that the shooting did not happen, he simply argues that he was not involved and not present. The mere fact that McGee presented a loose and contradicted alibi defense is not enough to show that his convictions were against the manifest weight of the evidence at trial—his identification by the eyewitness and target of the shots, the damage to the victim's truck, his subsequent Facebook messages to the victim, and the presence of the empty firearm shells are more than enough to overcome his manifest weight challenge. McGee's first assignment of error is meritless and is accordingly overruled.

{¶ 15} McGee next contends that his trial counsel was constitutionally ineffective. In order to obtain a reversal on appeal for ineffective assistance of counsel, a defendant must demonstrate both that defense counsel's performance was deficient, and that counsel's deficient performance prejudiced the defense. *See generally Strickland v. Washington*, 466 U.S. 668, 686 (1984). A properly licensed attorney is presumed competent, and a defendant bears the burden of showing ineffective assistance of counsel. *State v. Hamblin*, 37 Ohio St.3d 153, 155-56 (1988). In assessing claims of counsel's deficiency, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered

sound trial strategy." *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). And in evaluating whether the challenged action caused prejudice, the court must find that counsel's error was so serious that there is a reasonable probability it affected the outcome of the trial. *See*, *e.g.*, *State v. Bradley*, 42 Ohio St.3d 136 (1989).

{¶ 16} McGee argues that his counsel failed to properly investigate his alibi defense, and specifically that his counsel failed to ensure that the Lima invoices were admitted into evidence to support his alibi. He contends that his trial counsel failed to subpoena the business that issued the invoices, failed to timely disclose the invoices to the state, and failed to proffer the invoices for appellate purposes. Appellant argues that counsel's failures forced him to testify in his own defense, revealing his prior felony conviction to the jury and subjecting him to cross-examination on his prior statement to detectives.

{¶ 17} But as the state correctly argues in response, the existing record fails to demonstrate that McGee was prejudiced by counsel's allegedly defective performance. Specifically, the record is unclear regarding what the invoices would prove, and how and whether they are admissible. McGee's argument is an "off-the-record" claim that can only be brought in postconviction where McGee can offer evidence specifying how the invoices would have proven his alibi defense, and is accordingly able to establish both prongs of the *Strickland* standard. We must similarly observe that trial counsel's failure to proffer the invoices cannot be viewed as deficient performance in this context, since McGee has not established on appeal that the invoices were admissible on the current record. Finally, we observe that it is equally likely that counsel made a strategic decision at trial that McGee's alibi defense could be shown exclusively through Smith's testimony. As a result, McGee's decision—against the advice of counsel—to testify was not compelled by issues with the admission of the invoices. For these reasons, McGee has met neither prong of the *Strickland* test, and his second assignment of error is overruled.

{¶ 18} McGee next argued that the trial court erred to his prejudice by permitting the state to confront him with evidence of his prior conviction. Under Evid.R. 609(A)(2), when the accused testifies in his own defense, the state is permitted to impeach the accused's credibility with evidence that the accused was convicted of an offense punishable by death or imprisonment in excess of one year, only if the probative value of the evidence outweighs the dangers of unfair prejudice, confusion of the issues, and misleading the jury.

*See, e.g.*, *State v. Canada*, 10th Dist. No. 14AP-523, 2015-Ohio-2167, ¶ 65, citing *State v. Bryan*, 101 Ohio St. 3d 272, 2004-Ohio-971, ¶ 132. The trial court's decision to permit such impeachment is reviewed for an abuse of discretion. *Canada* at ¶ 63, citing *State v. Williams*, 2d Dist. No. 24149, 2011-Ohio-4726, ¶ 60.

{¶ 19} Here, the trial court permitted the state to impeach McGee with evidence of his November 30, 2010 conviction for conspiracy to transport marijuana into West Virginia. (Tr. Vol. 4 at 784-85.) Because he was not released from supervision until November 2011 and his trial occurred in July of 2021, this conviction was not excludable under Evid.R. 609(B). But McGee argues that the trial court misapplied the test for admission, because it referenced Evid.R. 403 in its ruling. Citing *State v. Goney*, 87 Ohio App.3d 497 (2d Dist.1993), McGee contends that "Evid.R. 403 is biased in favor of admissibility, but this is *not* the case where the accused is impeached by a prior conviction under Evid.R. 609(A)(2); the unfair prejudice need only outweigh probative value, rather than 'substantially' outweigh it." *Id*. at 502-03.

{¶ 20} But as this court has observed, the plain language of Evid.R. 609 references both Evid.R. 403(A) and 403(B), and the two rules must be read in conjunction— "[n]otwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that the accused has been convicted of a crime is * * * if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 609(A)(2). *See, e.g., State v. Staten*, 10th Dist. No. 98AP-263, 1999 Ohio App. LEXIS 349 *6 (Feb. 4, 1999), citing *State v. Wright*, 48 Ohio St.3d 5, 7 (1990). At the point McGee decided to testify, his credibility became central to the question of his alibi defense and his identification by McGowan. McGee cannot establish that the trial court's decision to allow evidence of his prior conviction was prejudicial to him, and given the fact that Evd.R. 609 itself refers to Evid.R. 403, the trial court's statements that it had "done the 403 balancing test in [its] head" and that its ruling allowing impeachment on the offense "does a good job of spreading the equities out" cannot establish an abuse of the trial court's discretion. McGee's third assignment of error consequently lacks merit and is overruled.

{¶ 21} In his final assignment of error, McGee argues that the trial court erred by failing to suppress the evidence of firearm shells collected during the warrantless sweep of

Smith's apartment, and of the Facebook messages between "William Cruse" and McGowan. Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court is in the "best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Therefore, appellate courts afford deference to the trial court's factual determinations and accept such determinations if they are supported by "competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). We "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶ 22} First, the warrantless search of Smith's apartment was a protective sweep justified by exigent circumstances—the state correctly argued that witnesses on the scene had expressed valid concerns that one or both of the men who shot at McGowan were hiding inside Smith's apartment, and given the fact that the officers had discovered shell casings in a pile in front of the apartment directly below Smith's, the conjunction in time between the shooting, the 9-1-1 call, and the protective sweep, and the fact that Officer Hicks testified that he only noticed the pile of shell casings near the inside door of the apartment as he was leaving the apartment and that the casings were in plain view, (*see* Sept. 10, 2020 Suppression Hearing Tr. at 12-14), and that Officer Hicks was only able to determine that the "active shooter" danger was over after he completed the protective sweep, *id.* at 14, the shell casings were admissible as objects in plain view of an officer conducting a legitimate protective sweep of the premises.

{¶ 23} Moreover, it is unclear that McGee had standing to even challenge this search—it was Smith's apartment, McGee did not live there, and he never testified that he was an overnight guest the day before or the day after the search. And at trial, Smith testified that on the day in question she "called [McGee] to come pick [her] up because [she] had some runs to make," and that McGee "dropped [her] off" after they returned from Lima. (Tr. Vol. 3 at 617, 628.) It is true that an overnight guest can have a reasonable expectation of privacy sufficient to establish standing to challenge a search, *see generally Minnesota v. Olson*, 495 U.S. 91, 95-96 (1990), but as this court has previously observed that rule " 'is limited in that it does not apply to prior overnight guests, regardless of the level of

frequency, who failed to present sufficient evidence to show that they were an overnight guest at the time of the search.' " *State v. Hawkins*, 10th Dist. No. 15AP-35, 2016-Ohio-1404, ¶ 95, quoting *Olsen* at 96-97. Accordingly, insofar as McGee's fourth assignment of error challenges the admission of the shell casings found inside Smith's apartment, it wholly lacks merit.

{¶ 24} As for the Facebook warrant, McGee's argument is not entirely clear. In the trial court McGee basically argued that the warrant was overbroad, as "Facebook" and "Facebook Messenger" are different applications, but it appears that he now has modified this position somewhat to contend that the search warrant affidavit did not present a sufficient nexus between the crimes being investigated and the "William Cruse" Facebook account. In *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, the Supreme Court of Ohio summarized the law governing such warrants, and held that to present a sufficient nexus, "the evidence [presented] must be sufficient for the magistrate to conclude that there is a fair probability that evidence of a crime will be found in a particular place * * * [and the] reviewing court must then ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at ¶ 35.

{¶ 25} In the supporting affidavit for the Facebook records for "William Cruse," the affiant notes that when McGowan was interviewed, he stated that "Mr. McGee had sent messages via Facebook to buy him a new truck if he would drop the charges." (Mar. 24, 2023 Def.'s Suppression Ex.; Apr. 10, 2019 Aff. in Support of Warrant to Search at 1.) And when McGee was interviewed, he "admitted that he offered Mr. McGowan money, or that he would buy Mr. McGowan a new truck if he would drop the charges." *Id.* Insofar as McGee may suggest that he isn't "William Cruse" and that the Facebook account does not belong to him, he would not have standing to object to the warrant. *See generally Rakas v. Illinois*, 439 U.S. 128 (1978) (Fourth Amendment rights are personal rights which may not be vicariously asserted, and a person aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed). But more important, while the defendant's legal name is "William Deangelo McGee" and the Facebook account was for "william.cruse.524" a/k/a "William Cruse," McGee admitted that the Facebook account was his and he sent the messages during his police interview. Based

on all the assertions in the affidavit, it was reasonable for the issuing judge to conclude that evidence relating to the crime would be found in the "William Cruse" Facebook account records.

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for * * * conclud[ing]' that probable cause existed.

*State v. George*, 45 Ohio St.3d 325, 329 (1989), quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983).

{¶ 26} In short, the fact that McGowan received messages offering to buy him a new truck from "William Cruse" combined with the fact that McGee admitted to the police that he had made such an offer is a sufficient basis for the magistrate to have determined that there was probable cause to support the warrant. As a consequence, McGee's fourth assignment of error wholly lacks merit and is overruled.

{¶ 27} For all these reasons, McGee's four assignments of error are overruled, and we affirm the judgment and sentence of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and LELAND, JJ., concur.

———————————